# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## MARCH TERM, 1924.

---

ADAMS *v.* BELT *et al.*[*]

(Division A. Feb. 4, 1924.   Suggestion of Error Overruled June 2, 1924.)

[100 So. 191.   No. 23715.]

1. EQUITY. *Burden on party attacking decree to show failure of service of notice by publication on nonresident defendants.*

   In a suit to set aside a decree against nonresident defendants reciting that the defendants had been cited to appear by publication made according to law, on the ground that no legal publication for the defendants had in fact been made, the burden of proving the falsity of the recital to the contrary in the decree by clear and convincing evidence is on the party attacking the decree.

2. EQUITY. *Order for publication of process for nonresident defendants not invalid because not in handwriting or signed by clerk.*

   An order for the publication of process for nonresident defendants to a suit in chancery made by the clerk of the court pursuant to articles 34, 36, chapter 62, Code 1857, is not invalid because it is not in the handwriting nor signed by the clerk and not afterwards approved by the court in term time.

3. INFANTS. *When suit to annul decree against minor defendants must be brought, stated.*

   A suit to annul a decree against minor defendants must be brought not later than two years after the minors have obtained their majority, unless they are without knowledge of the rendition of the decree, or of such facts as would reasonably put them on inquiry and lead to a discovery thereof.

4. INFANTS. *Principle of concealed fraud held not applicable to things openly done or which appear of record.*

(511)

The principle of concealed fraud has no application to things that were openly done or which appear of record.

*Headnotes 1. Equity, 21 C. J., section 936; 2. Equity, 21 C. J., section 367 (1925 Anno); 3. Infants, 31 C. J., section 367; 4. Infants, 31 C. J., section 367 (1925 Anno).

APPEAL from chancery court of Tallahatchie county. HON. G. E. WILLIAMS, Chancellor.

Suit by C. I. Belt and others against Joseph C. Adams. From a judgment for plaintiffs, defendant appeals. Reversed and bill dismissed.

*Julian C. Wilson,* for appellant.

I. The will of L. Carleton Belt, never having been probated in the state of Mississippi until after the death of his widow, Mrs. E. T. Belt, the rights of the parties to the lands involved in this litigation are to be determined as though L. Carleton Belt died intestate. *Virginia Trust Co. et al.* v. *Buford et al.,* 123 Miss. 572, 86 So. 356 and 516.

The authorities hold that the devolution of title must rely solely upon the law of this jurisdiction. *McCormick, et ux.* v. *Sullivant, et al.* (U. S.) 6 L. Ed. 300; *Overby* v. *Gordon,* 44 L. Ed. 741; *Pennoyer* v. *Neff,* 95 U. S. 722, 23 L. Ed. 568; *Woodville* v. *Pizatti,* 119 Miss. 442, 81 So. 127; *Cruso* v. *Butler,* 36 Miss. 160; 1 Alexander's Commentaries on Wills, par. 281. Many of the decisions are collated in code-note to *Lindsey* v. *Wilson,* 2 L. R. A. (N. S.) 408. We are not disputing the proposition that a will may be probated after the lapse of time, and we fully appreciate the fact that there is no express statute of limitations against the probate of a will in Mississippi. But, if devises fail or refuse to probate a will for a long lapse of time they take the consequences as to the legal effect of the delay.

Proceeding then to a discussion of the rights of the parties upon the theory that Belt died intestate, we respectfully submit that under the Code of 1857, the lands

involved in this suit descended to the three Belt children
as heirs-at-law.  If Mrs. Belt took anything under the
law of descent and distribution, as they existed under the
Code of 1857, the only interest which she could possibly
have taken would have been a dower interest in one-third
of the lands.  Article 162, p. 467, Code of 1857.  But we
respectfully submit that in the present case, there being
a will duly probated in Georgia, and containing a provi-
sion for the widow, which the bill in this cause affirma-
tively shows under Article 168, p. 468, Code of 1857,
changing the common law, the devise of the widow under
the will was in lieu of dower in land, and accordingly
Mrs. Belt did not even possess a dower interest.  The
only decision which undertakes to apply this statute to
a foreign will, so far as we know, is *Wilson* v. *Cox,* 49
Miss. 539.  Here the court permitted the wife to claim
her dower interest in 'Mississippi lands, but at the same
time inferentially and necessarily held that if the tes-
tator had not expressly limited his will to the Louisiana
property the provision under the will would be in lieu
of dower.

There are, then, two possible theories of this case as
to the widow's right on the theory of intestacy.  Under
one view she had a dower interest to one-third of the Mis-
sissippi lands.  If Article 168, Code of 1857, applies, she
had no dower interest whatever.  But under either view
she was not a life-tenant.  Under the authority of *Wood*
v. *Bott,* 56 Miss. 128, even though the widow had a dower
interest, she was a competent person to buy the fee at a
judicial sale.  This is bound to be the law under the view
of the case which we are now presenting, that is to say,
that the will was inoperative at the time of the Jenkins
foreclosure.  Under this view Mrs. Belt was under no
disability to buy the premises at the Jenkins foreclosure.
Certainly if she had no dower interest whatever she was
a competent person to buy, and there was no fiduciary
relation whatever as to the Mississippi lands.

136 Miss.—33.

Mrs. Belt was never the executrix of her husband's will so far as Mississippi is concerned, or any right to her claim in Mississippi land; or as to any court procedure in Mississippi. This is put beyond question by the very recent case of *City Savings & Trust Co.* v. *Brancheri,* 111 Miss. 774, 72 So. 196, holding that a payment by a Mississippi bank, of monies on deposit, to a foreign administrator, where no certified copy of the record of the appointment had been filed in this state, was a nullity and the acquittance by the foreign administrator did not relieve the bank of a second payment to the local administrator.

II. The sale in the case of *Margaret Jenkins, Administratrix* v. *Elizabeth T. Belt et al.,* was a valid sale because: (a) The court unquestionably had jurisdiction of the *res.* (b) The court unquestionably had jurisdiction of all the parties. (c) Unquestionably all of the proceedings therein were regular. (d) The validity of the decree or judgment does not depend upon the refinement of language.

Order taken at rules, third Monday of October eighteen seventy, *Margaret Jenkins, Administratrix,* v. *Elizabeth T. Jenkins.* On opening the bill in this cause it appearing that the defendants, are non-residents of this state and are citizens of the state of Georgia and of the city of Augusta, it is therefore ordered that notice be published in the Tallahatchie News, a weekly paper published in the town of Charleston, in Tallahatchie county, for four successive weeks, to appear at the next November term of the chancery court for said county to plead, answer or demur to the said bill of complaint, or same will be taken for confessed and it is further ordered that a copy of this order be sent by mail, according to law, to said defendants, directed to them at said city of Augusta, in said state of Georgia.

III.   Mrs. Elizabeth T. Belt acquired an indefeasible fee-simple title to the land in this case at the sale under the decree in the case of *Jenkins, Administratrix,* v. *Elizabeth T. Belt, et al.   Wood* v. *Bott,* 56 Miss. 128; *Bainbridge et al.* v. *John R. Woodburn et al.,* 52 Miss. 95.

IV.   In any event, we submit that Mrs. Belt acquired the legal title at the foreclosure sale in the case of *Jenkins, Administratrix,* v. *Elizabeth T. Belt, et al.,* subject to the rights of her children to require her to convey to them their respective interests in the land within a reasonable time, but not after Mrs. Belt had conveyed it to an innocent purchaser for value without notice.   *Temple* v. *Cain,* 60 Miss. 481; *Chapman* v. *Sims,* 53 Miss. 154; *Sanders* v. *Sorrell,* 65 Miss. 268; *Smith* v. *McWhorter,* 74 Miss. 403.   As to any minors:  see, *Barksdale.* v. *Learned,* 112 Miss. 869; *McAnulty* v. *Hodges,* 35 Miss. 579; *Bland* v. *Muncaster,* 24 Miss. 62 and 68; *Dickerson* v. *Weeks,* 106 Miss. 611; 18 Cyc. 771 and 772; 11 R. C. L. 362, secs. 427-428.

V.   The appellant is fully protected by article 2, chapter 57, p. 399, Code of 1857, prescribing a limit of ten years within which any person may bring any suit in equity to recover lands, the corresponding section of the Code of 1906, being 3091.   The case is strikingly similar to *Kentucky* v. *Clark,* 110 Ky., —, 83 S. W. 100; 9 L. R. A. (N. E.), 750.   This authority is furthermore in point in holding that the executor, by qualifying as such, is not precluded from buying in the outstanding paramount title.   The distinction made by the Kentucky court is, we think, a very important distinction.   We understand this holding to be, and the sound view to be, that if Mrs. Belt had no vested title she was not an incompetent person to buy an outstanding title, and assert it adversely to the remaindermen.   This is the true, legal *status* of the parties in the present suit.   It cannot be successfully main-

tained that Mrs. Belt had a vested interest as life tenant. It is a legal-impossibility now to invest her with this life interest.   There is no law to force the widow in Mississippi to take a life estate contrary to her will.   To the point that a-bill *quia timet* to assert and establish the rights of remaindermen may be maintained against even a life tenant claiming adverse rights to the property, we refer the court to *Yancey* v. *Holladay,* 7 Dana (Ky.) 230; *Clark* v. *Cattron,* 23 Tex. Civil Appeals 51, 56 S. W. 99; *Arthur* v. *Gayle,* 38 Ala. 259.

VI.   This cause of action is furthermore barred by section 2489, Hemingway's Code, section 3125, Code of 1906.   *Meyer* v. *Meyer,* 106 Miss. 638, 64 So. 420; *Fox* v. *Coon,* 64 Miss. 466; *Davis* v. *Townsend,* 45 Minn. 523, 48 N. W. 405; *Monroe* v. *Wilson,* 68 N. H. 580, 41 Atl. 240. This statute applies to constructive trusts such as this, if it be conceded for the sake of argument that Mrs. Belt did not acquire the absolute fee-simple title under the Jenkins foreclosure, as well as to all implied and resulting trusts.   To this effect are the following cases: *Robinson* v. *Strauther,* 106 Miss. 759-765; *Stanton* v. *Holm,* 67 Miss. 237; *Patten* v. *Pinkston,* 86 Miss. 651.

VII.   The appellant is protected by the one-year statute of limitation governing judicial sales, as it existed under the Code of 1871, section 2173.   See *Morgan* v. *Lodge,* 53 Miss. 665.   It is also applicable in a case where the court was without jurisdiction to appoint the guardian who made the sale.   See *Hall* v. *Wells,* 54 Miss. 289; *Jeffreys* v. *Dowdle,* 61 Miss. 504.   It even applies if notice were not given to the parties defendant.   *Summers* v. *Brady,* 56 Miss. 10.

VIII.   The appellant is protected by section 2458, Hemingway's Code, providing that ten years adverse possession shall confer a title.   *Gardiner, et al.,* v. *Hinton,* 86 Miss. 604; *Peeples* v. *Boykin,* 96 So. —.

IX.  Appellees are guilty of laches, gross negligence, and should be estopped from now maintaining this action to the prejudice of a bona-fide occupant of the premises. Comans v. Tapley, 101 Miss. 211.

X.  Appellant Adams is not legally charged with any implied notice or imputed notice of appellees' claim or alleged equities. McCormick v. Sullivant, 6 L. Ed. 300.

XI.  The title which Mrs. Belt acquired in the foreclosure case of Jenkins v. Belt, was not the title created by L. Carleton Belt in his will, but was the title conveyed to Jenkins by Belt and secured by a mortgage. Mrs. Belt therefore did not take under the will, or buy under the will at the foreclosure sale in Re Jenkins, Administratrix, v. Mrs. E. T. Belt, et al., but bought over the will, and paramount to it. Brown v. Bartee, 10 S. & M. 268; Bainbridge v. Woodburn, 52 Miss. 95.

XII.  Mrs. Belt was neither a necessary nor proper party in her official capacity as executrix of the estate of L. Carleton Belt in the foreclosure suit of Jenkins, Administratrix, v. Mrs. Elizabeth T. Belt, et al., to foreclose the mortgage given by Belt to Jenkins. Jefferson College v. Dickson, F. C. R. 474; Byrne v. Taylor, 46 Miss. 95.

XIII.  The proceedings in the case at bar constitute a collateral, and not a direct attack on the Jenkins foreclosure suit. Duncan v. McNeil, 31 Miss. 704; Cannon v. Cooper, 39 Miss. 784, 80 Am. Dec. 101; Vicksburg Grocery Co. v. Brennan, 20 So. 845; Davis v. Cass, 72 Miss. 985; Gillespie .v. Hauenstein, 72 Miss. 838; Moore v. Ware, 51 Miss. 206; Allen v. Dickens, 63 Miss. 91; Martin v. Miller, 103 Miss. 754; Railway Co. v. Thomas, 86 Miss. 27; Friley v. Hendricks, 27 Miss. 412.

*Wells, Stevens & Jones,* also, for appellant.

It will be seen that this case turns on the effect to be given to the chancery foreclosure sale of the vendor's lien given by L. C. Belt to the Jenkinses.

I.   THE FORECLOSURE SALE.   It is alleged there was no process on the minors.   The order *pro confesso* recites proper process.   The final decree recognizes and limits the above order as a decree *pro confesso* against the adult, Mrs. C. T. Belt.   It is contended by us that this recital is conclusive in this case because it is not a direct attack on the judgment then rendered, but is a collateral attack on the title of Adams, derived from a sale under that decree.   If it is correct that the recital of process is final in this suit, then the court need not examine the record to show that the process was in fact good, as we insist it was.   Such a recital is conclusive against collateral attack.   *Cannon* v. *Cooper,* 39 Miss. 784; *Cocks* v. *Simmons,* 57 Miss. 183; *Saddler* v. *Prairie Lodge,* 57 Miss. 572; *Allen* v. *Dickens,* 63 Miss. 91; *Sweatman* v. *Dean,* 86 Miss. 641; *Martin* v. *Miller,* 103 Miss. 754.

It is contended, however, that this is a direct and not a collateral attack.   Such contention, however, does not make it direct, and the fact remains that it is not the judgment obtained by Mrs. Jenkins which is assailed, but the title of Adams, derived from a sale under that judgment.   There can be no direct attack on the original decree for sale without the plaintiff in that decree before the court, because the relief must be confined to the title. *Friley* v. *Hendricks,* 27 Miss. 412.

II.   DIRECT ATTACK BARRED.   If it is a direct attack to annul the decree of sale, it is barred by the limitation against bills of review and applied by analogy to suits to impeach and annul decrees.   The statute of limitations which bars this suit, and upon the very threshold of the case prevents the complainants from maintaining this

bill is section 3111, Miss. Code 1906; Section 2475, Hemingway's Code.    It has been construed by our supreme
. court as controlling in cases of bills to annul and impeach
a decree.  *Brooks* v. *Spann,* 63 Miss. 198.

It remains only to ask if the defendants being minors
at the time, are bound by the decree if they do not move
by way of a bill of review or a bill to annul and impeach
the decree within two years after reaching majority.
This is settled by *Mayo* v. *Clancy,* 57 Miss. 674; *Metcalf*
v. *Perry,* 66 'Miss. 68.

We shall conclude this portion of the argument by a
summary, as follows:  The complainants show in their
bill a decree of a court having jurisdiction of the subject-
matter which is *res adjudicata* of this suit, and are barred
from suing to annul the said decree by the statute ap-
plicable to such cases, and they show no such facts as
will take their case out of that bar.  So we contend that,
if it is a collateral attack, the recital of service is final,
and, if it is a suit to impeach or annul the decree, it is
barred by the analogy of the two year statute.

III.   IN FACT THERE WAS VALID PROCESS.    There is
not only recital of. process by publication, prima-facie
correct, but proof of it and proof of its being mailed,
made and sworn to in open court before the chancellor
and apparently regular.  The question then recurs to the
acquirement of jurisdiction of the person of the litigants.
It is the position of the defendant that the record of the
suit of *Jenkins* v. *Belt,* shows the occurrence of all things
necessary to give the court jurisdiction of the minor, non-
resident defendants in that suit.  The law of service on
non-residents has been materially changed in the years
subsequent to this suit.  The instant case, however, in
so far as the service of process to bring litigants into
court is concerned must be judged by the 1857 Code, and
applicable amendments or changes made prior to the per-
fecting of service, which was completed before the Code

of 1871 came into effect. The law applicable, then, is Articles 34 and 36 of Chapter 62, Code of 1857, chapter 237 of the Acts of 1862, p. 264, and the Act of 1867, p. 383, amending these articles. By these laws a complete scheme of obtaining valid process on non-resident defendants is provided and where service is obtained under them, whether the defendants are minors or of full age, the decree is final after five years, although the non-residents may not have answered.

IV. THE RECEIPT FOR THE MONEY. A receipt is shown dated February 15, 1871, for three thousand dollars, in full payment of the decree signed by Captain Eskridge. This was dated between the decree for sale and the sale itself, which was afterwards confirmed. It operated apparently as an equitable assignment of the debt to Mrs. Belt, for the sale was made, completed and confirmed, and the title vested in her. Certainly defendant Adams had no notice of it.

While there is a conflict of authority on the particular subject, even under an unconfirmed execution sale, an innocent purchaser gets a good title if sale is made after satisfaction of the judgment, when the satisfaction is not shown of record. In other words, if the sheriff sells under an execution, valid on its face and on the record, a purchaser who is not informed gets a good title in spite of a payment of the judgment before sale, not shown on the record. *Doe ex dem Van Campen* v. *Snyder,* 3 Howard 69; *Morton* v. *Grenada Academy,* 8 S. & M. 773; *S. F. Doe* v. *Ingersoll,* 11 S. & M. 249, *ante* 61; *Ladd* v. *Craig,* 94 Miss. 667-668; *Henderson* v. *Herrod,* 23 Miss. 454; *Hammond* v. *Cailleaud,* 52 Am. St. Rep. 177.

V. THE EFFECT OF DEED TO MRS. BELT. It is now claimed, so far successfully, that Mrs. Belt was disqualified to buy at this mortgage sale because she was an executrix, under the will in Georgia, and the bill frankly

stated as it should in fairness, and because she was a life tenant under that will. Mrs. Belt was neither an executrix in Mississippi, nor a life tenant under the will, because no rights or offices accrued under the will not probated in Mississippi. No one could then say it could be proven under the Mississippi law. *Virginia Trust Co.* v. *Buford,* 123 Miss. 572. Mrs. Belt, as a foreign executrix, could not even have been made a party. Note to *Brown* v. *Fletcher,* 15 L. R. A. (N. S.) 632, and in 210 U. S. 182, 52 L. Ed. 966.

A purchase at judicial sale of a decedent's property by an executor is not void but at most voidable only. *Temple* v. *Cain,* 60 Miss. 485; *McAnulty* v. *Hodges,* 35 Miss. 579; *Bland* v. *Muncaster,* 24 Miss. 62, 68. When such purchase is made the executrix holds as trustee, at the election of the beneficiaries. *Sanders* v. *Morrell,* 65 Miss. 268; *Chapman* v. *Sims,* 52 Miss. 154; *Stark* v. *Sims,* 144 C. C. A. 413; *Moore* v. *Cary,* 116 Ga. 28, 42 S. E. Ed. 258. This trust relation ends, at least as to a purchaser, after the expiration of a reasonable time to claim the benefit of the trust. In other words, the voidable purchase is ratified after a reasonable time and a new purchase. *Smith* v. *McWhorter,* 74 Miss. 400; *Dickerson* v. *Weeks,* 106 Miss. 611; *Barksdale* v. *Leonard,* 112 Miss. 861.

It is true the cases from Mississippi last cited are cases of cotenancy, but they are cases of voidable purchases or rather purchases where the purchaser may be held as trustee and the rights which flow from them are the same, as in all other cases of constructive or implied trust. 18 Cyc. Executors and Administrators, pp. 771-772; 11 R. C. L., p. 362; *Word* v. *Davis,* 107 Ga. 980, 33 S. E. 691.

To show the necessity for action within a reasonable time, and that such purchases may be good by consent or acquiescence, see, 11 R. C. L., p. 362, secs. 427 and 428. Apart from the necessity to act in a reasonable time, if it is a trust, and not an express one, the right to enforce

it expires within ten years except 'as to minors and always within thirty-one years. Code 1906, sec. 3125; Hemingway's Code, sec. 2089.

The statute applies to constructive trusts such as this, as well as to all implied and resulting trusts. *Robinson* v. *Strauther*, 106 Miss. 759-765; *Stanton* v. *Holm*, 67 Miss. 237; *Patten* v. *Pinkston*, 86 Miss. 651.

VI. Nature of Title Acquired by Mrs. E. T. Belt. It is apparently the contention of the complainants that, conceding that the sale in *Jenkins* v. *Belt*, was operative, at all, and competent to pass a title to Mrs. Belt, yet the title so acquired by her was precisely that held by her at the time immediately preceding the sale, to-wit: a life estate, with a remainder over to complainants. In other words, that her purchase at the sale operated merely as a redemption from the vendor's lien, and put both her and complainants in ownership of the same estates, held by them under Belt's will. We submit that the sale passed a fee to Mrs. Belt with no title or equities existing after the sale in the complainants, and further that if any equity did subsist in the complainants it was merely a right to share in the purchase upon timely contribution to the cost thereof while the property remained in Mrs. Belt's hands, which has been barred for many years, or to enforce a trust not cognizable at common law which has also been barred for many years. The title sold under a foreclosure sale is always exactly that mortgaged or conveyed in trust. Subsequent action to the mortgagee by the mortgagor, or his death, does not affect this. *Bainbridge* v. *Woodburn*, 52 Miss. 95. Moreover, it has been uniformly held that the good faith of the mortgagees enures to the benefit of a *mala-fide* purchaser, or one with notice of an equity; for the mortgagee is entitled to an unrestricted market and must be able to transmit exactly the title of the mortgagor as he himself received it, free, in the hands of the purchaser, of all equities not operat-

ing against the mortgagee.  *Calhoun* v. *Monroe,* 56 Ala. 303; *Securities Co.* v. *Sheppard,* 78 Miss. 217; *Col. Blg. & Ins. Co.* v. *Humphries,* 64 Miss. 1.

Mrs. Belt was not disqualified to buy the fee at this sale. This is settled by *Wood* v. *Bott,* 56 Miss. 128 (to be distinguished from *Bott* v. *Wood,* at page 136 of the same volume), *Aubuchon* v. *Aubuchon* (Mo.), 34 S. W. 569. An executrix who owns an interest in the land (a life estate) may buy for her own benefit. *Penny* v. *Jackson,* 85 Ala. 67, 4. So. 720; *Iron Co.* v. *Fullenwider* (Mo.), 57 S. W. 1078.

We shall summarize our position as follows: Mrs. Belt, although a life tenant, and executrix, and mother, was not in any such relation to the land, the remaindermen or her children as to prevent her purchase of the fee, under a court sale, foreclosing a mortgage executed by the ancestor, testator and father, or made to pay his debts, and the title she took was the ancestor's title at the time he made the mortgage, unaffected by anything he did after its making. We have, of course, assumed in the foregoing notice to Adams, the present defendant, that Mrs. Belt occupied all these positions. But the notice that she was executrix—the will not having been filed in Mississippi, could have been drawn only from the allegation in the original bill in *Jenkins* v. *Belt,* and the bill contains no word about life tenancy. An inspection of the record in that case would have advised Adams indeed that Mrs. Belt was the widow, but it would also have advised him that the sale was based on a title paramount to the will, and that the sale would carry a title which could not be affected by that will. We may then dismiss the matter of notice; for Adams, claiming under a title which is paramount to the will and does not trace through it, is unaffected by anything in it.

VII. RIGHT OF COMPLAINANTS LIMITED TO CHARGING MRS. BELT PERSONALLY. It has been an assumption of

the complainants and vital to their case that the purchase
by Mrs. Belt enured to the benefit of all the devisees of
Belt.   We have demonstrated by the *Wood* v. *Bott and
German-American Co.'s Appeal* cases that this is not the
law and that her purchase was for her benefit alone.   It
was never more than an inchoate, personal equity, and
not an estate at any time.   The trust is one not cognizable
at common law, and is barred by the lapse of ten years.
*Smith* v. *McWhorter*, 74 Miss. 400; *Murdock* v. *Hughes*,
7 S. W. 219; *Saunders* v. *Gorrell*, 65 Miss.; *Barksdale* v.
*Learned*, 112 Miss. — —.

Assume that she was a trustee, not simply liable to be
made one—and still the complainants are barred of a
present assertion of the trust by the statute of ten years
codified as section 2469, Hemingway's Code (sec. 3125,
Code 1906).   This statute is applicable to trusts created
by the purchase of the legal title by one in a fiduciary re-
lation (either as to the property purchased or the funds
used) with those asserting the trust.   It begins to run
when the title is taken by the trustee or *quasi*-trustee,
and even if express when the express trust is repudiated
—and a conveyance is a repudiation.   We cite to this
point the following cases: *Murdock* v. *Hughes*, 7 S. &
M. 219; *Livermore* v. *Johnson*, 27 Miss. 284; *Prewitt* v.
*Buckingham*, 28 Miss. 92; *Edwards* v. *Ingraham*, 31 Miss.
272; *Watts* v. *Green*, 53 Miss. 502; *Cooper* v. *Cooper*, 61
Miss. 676; *Stanton* v. *Helm*, 87 Miss. 287; *Robertson* v.
*Strauther*, 106 Miss. 954; and from other states, particu-
larly on the point that a repudiation of an express trust
by a conveyance starts the statute.   *Franks Estate*
(Penn.), 27 Atl. 724; *Hubbell* v. *Anthony*, 53 N. Y. 98;
*McMasters* v. *Miles*, 30 Tex. 591.

VIII.   THE RIGHT TO HOLD MRS. BELT AS TRUSTEE WAS
LOST WHEN ADAMS BOUGHT.   *Dickerson* v. *Weeks*, 106
Miss. 311; *Barksdale* v. *Learned*, 112 Miss. 868.   Assum-
ing then the most unfavorable rule of law conceivable to
our side of the case, and assuming that Adams should

have taken notice of the equity of the Belts to hold Eve as trustee in place of their mother, when he bought as against adults who had not sought to hold her for seventeen or more years after reaching majority, they are estopped to assert the right against him, especially after letting him clear and improve the land.

*Cutrer & Smith, Woods & Kuykendall* and *Evans & Evans,* for appellee.

The propositions which advance themselves on behalf of appellees, have already received the express sanction of the court, not only in this case, but in a long succession of decisions, without a break. We advance the proposition that the decree in the case of *Jenkins, Administratrix,* v. *Belt,* is void, for the many reasons urged in our brief, filed on the first appeal. These further considerations are pressed upon the attention of the court. The Act of 1862, page 264, amendatory of the Code of 1857, article 34, chapter 62, relating to the service of process on absent or non-resident parties, still requires an order of court as a prerequisite for publication; and then that "it shall be the duty of the court making any order of publication against an absent or non-resident party, to require the person applying for such order to state *in his affidavit* the *residence* of such absent or non-resident party, if the same can be ascertained." This provision supplanted all other portions of any act which made a less degree of proof than an affidavit of record, satisfactory proof of absence from the state, or non-residency, and of the residence of any such party defendant, regardless of any argument of counsel to the contrary.

Counsel argue that while there may be no proof, or showing in the record, of this initial jurisdictional fact, yet it will be considered that the court was satisfied of its existence, and that is sufficient; and that in aid of appellant's case, the presumption of regularity should

prevail, and supply the deficiencies. There is no way, we contend, for a court to be satisfied except by evidence produced before it, and in chancery courts, at the time the proceedings in the Jenkins-Belt case were transpiring, all evidence was required to be in writing, and filed with and as a part of the record. *Winner* v. *Brandon,* 82 Miss. 767. There is no suggestion that any part of the record has been lost. Furthermore, the law of 1870 required a final record to be made of all chancery cases within three months. That was done here, and that record also, was introduced below, and the original record and that record conformed entirely. We conclude, therefore, that the record was complete, and that no proof was filed on that or any other feature of the case, except what the record shows. *Winner* v. *Brandon, supra;* see 12 Ill. 283, 27 Ill. 148.

The general presumption in favor of regularity of the proceedings of courts of general jurisdiction cannot be applied to the process whereby the parties are brought into court. *Foster* v. *Simmons,* 40 Miss. 585. In all such cases, the antecedent proceedings requisite to instituting publication, must appear affirmatively by the record to have been complied with, and they can be shown only by the record, or the subsequent proceedings are void. *Glenn* v. *Wragg,* 41 Miss. 654; *Drysdale* v. *Biloxi Canning Co.,* 67 Miss. 534; *Diggs* v. *Ingersoll,* 28 So. 825; *McKinney* v. *Adams,* 85 Miss. 832; *Ponder* v. *Martin,* 119 Miss. 156.

But it is said that a sale confirmed by the court, under a decree not cancelled of record, confers a good title. Our court has never so decided, each particular case being dependent on its own particular facts. But aside from any such contention, this court in *Morton* v. *Grenada Academy,* 11 S. & M. 784-785, made the following announcement on the question as to whether or not "a *bona-fide* purchaser under a judgment which has been satisfied, will be protected, if it does not appear that the

judgment has been satisfied. This we need not now affirm or deny. The cases of *Ludington* v. *Peck,* 2 Conn. 702, and *Jackson* v. *Caldwell,* 1 Cow. 622, cited in *Van Campen* v. *Snyder,* only hold that an execution is not void when it does not appear of record that the judgment has been paid, and that a *bona-fide* purchaser under such execution will be protected. But one who purchases, knowing that the judgment has been satisfied, is not a *bona-fide* purchaser.''

Supplementing these objections, the sale is clearly void on the face of the record. There is no advertisement of sale accompanying the report. There purported to be a sale for cash when the statute required sales to be on a credit. Code of 1857, Article 59, p. 549. The sale did not purport to be made in compliance with the Constitution, in that sales were not made and reported of lands in tracts of one hundred and sixty acres. The sale did not purport to have been made within legal hours. The sale did not purport to have been made by D. M. White, clerk, nor did the report purport to have been made by him, but both sale and report purport to have been made by one, Nicholetts. The alleged report was not called up for confirmation at the April Term, 1871, of the court, but was suffered to lie dormant until the July Term. The court has held, in *Henderson* v. *Herrod,* 23 Miss. 454, that ''When the motion to confirm has been made, a day is assigned within which a party objecting to confirmation could attend and show cause against it,'' and if he does not do so, any injuries he may suffer will be attributed to his laches. The sale having undoubtedly been made by Nicholetts, and not by White, it was void, and nothing could lift it up into life. An actual interloper as Nicholetts was—a part of an irresponsible body of invaders that came into Mississippi at that trying time—could not have been designated and selected for appointment by the decree of the court. There is no room for doubt that Nicholetts was proceeding without the shadow of a right

emanating from any source, and that in consequence, as we have said his acts were *ultra* void. *Sebastian* v. *Johnson,* 72 Ill. 282, S. C. 22 A. R. 144; *Williamson* v. *Berry,* 8 How. (U. S.) 495-544, S. C. 12 L. E. 1170; *Heyer* v. *Deaves,* 2 Johns. N. Y. Ch. 154.

There is another reason why Mrs. Belt got no title from the Nicholetts episode, and why the deed he undertook to execute is without validity. He was not a commissioner.

The foreclosure proceedings in the Eve-Belt matter do not possess the attributes of impeccability. As has been pointed out, the mortgage which he possessed does not contain any warranty of title of any kind, and under the statute in effect at the time, the only warranty which he possessed arose from the use of the words employed in the mortgage: "grant, bargain and sell." There is no other language in the instrument which can be distorted into anything like an express or implied warranty, except by reason of the operation of these words.

The consideration of these facts, brings forcibly into action the provisions of article 7, section 2 of chapter 36, page 307 of the Code of 1857. We have seen that the warranty which was implied in the mortgage from Mrs. Belt to Eve, did not carry a warranty to an estate in fee. All that was necessary to meet the terms of the warranty was that Mrs. Belt should have been seised of an estate which should be free from encumbrances, and that the grantee and those claiming under him, should have quiet enjoyment of the premises against the grantor, her heirs and assigns. Every condition of this warranty was met by Mrs. Belt, because while at the giving of the mortgage the premises were encumbered in favor of the Jenkins estate, the indebtedness which constituted that encumbrance, had on February 15, 1871, been fully satisfied and discharged, and quiet enjoyment was vouchsafed to the grantee until February 17, 1917. It will be seen that the conveyance granted by Mrs. Belt to Eve did not purport to pass a greater estate than she could lawfully convey.

The appellant contends very strenuously that the appellees have lost their rights in the property because of the failure to probate the will of Captain Belt, until after the institution of this litigation. They say that the failure of the court so to hold is contrary to the spirit, if not the letter of the decision of this court in the case of *Virginia Trust Co.* v. *Buford.* It is sufficient answer, to this contention, to say that the rule has been announced time out of mind by the courts of Mississippi, that a devisee derives his interest in the estate of a devisor from the will of the testator, and that property of the deceased vests in the devisee from the moment of the testator's death. It is true that the courts of the several states may direct and control the character of evidence that will be received as evidence of title, and that in the exercise of that power, the states may provide that a foreign will shall not be competent evidence unless an authenticated copy shall first have been admitted to probate in the jurisdiction where the property in question may be situated. There is no limitation upon the time when such probate may be had, but when had, it is uniformly held that the probate relates back to and speaks as of the date of the death of the testator. *Poole* v. *The Lessee of Fleeger,* 11 Peters 185; 9 L. Ed. 680; *Evans* v. *Anderson,* 15 Ohio State 324.

It is urged by appellant that appellees are not entitled to show the invalidity of the proceedings attacked by appellees as void, for the reason that the attack upon these proceedings is termed by appellant, a collateral and not a direct attack thereon. This question was raised on the suggestion of error following the deliverance of the original opinion, and in answer to that contention, which was a sufficient guide for the parties to this litigation, the court said this: "The bill in the present case alleged that prior to the sale in the former suit, Mrs. Jenkins was paid in full, and her claim satisfied, which of course, if true, removed any interest she may have growing out of

the present litigation. The general rule, however, is that the nonjoinder or misjoinder of parties must be raised by plea, and if the defendants deemed the joinder of Mrs. Jenkins, or her heirs, necessary, they may set forth in their pleadings a suggestion of their necessity and raise the question by plea.'' We call special attention to *Warren* v. *Union Bank,* 157 N. Y. 259, 68 A. S. R. 777.

The ultimate defenses of the appellant are those of laches and the statutes of limitation. The facts of this case do not make any of these defenses available. The minors at the time of the death of Captain Belt, were residents of a foreign state. Their minority and the complexity of the events by which they were surrounded after the death of Captain Belt, and for a long number of years afterwards, the reconstruction era following immediately upon the war and the loss of the father by the war, besides material losses due to emancipation and extended economic demoralization, precluded them from all knowledge of an estate which Captain Belt had left outside of the state of Georgia. Besides this, as events developed, it was manifestly to the interest of Eve and Mrs. Belt, that the minors should be kept uninformed of the situation in Mississippi.

It is certainly not laches not to know. It is certainly not laches to depend upon the fidelity of an executrix and a guardian, who is also a mother. It is not laches for a remainderman to rely upon the preservation of his estate by a life tenant. It is not laches for a remainderman to await the assertion of his rights to the' ownership of property, until after the death of a life tenant. Neither is it laches for a remainderman to submit to the possession of an occupant who may claim to own the fee, until after his right to possession shall have accrued; nor is it laches for a remainderman to fail to file a bill to remove clouds from title, although he may be informed of an adverse claim to title. He may do so, but his failure to do so cannot militate against him. *Fox* v. *Coon,* 64

Miss. 465; *Hoskins* v. *Ames,* 78 Miss. 986. Neither will the remainderman be barred of his rights by laches. *Shipp* v. *McKee,* 80 Miss. 741.

But as we have said, this is not a case which invites, the application of statutes of limitation. Fraud is imputable to the appellant, and those under whom he claims, from the inception of the mortgage from Mrs. Belt to Eve, and from the beginning of the suit of *Jenkins* v. *Belt,* to the present time. Not a dollar is shown to have been paid by Mrs. Belt for any interest in the land in controversy. She was not possessed of an estate in the lands in controversy, greater than an estate for life.

It is sought to maintain the proposition that Mrs. Belt could have bought, because in the case of *Bott* v. *Woods,* 56 Miss. 128, a sale was sustained where the husband of a dowress who had formerly been executrix of the estate, acquired lands of the estate, but in that case the court held that, "the charge of fraud by appellees in procuring title to the land, is wholly unsupported and overthrown," and that the purchase had been made in the utmost good faith. In other words, at the time of the purchase, the former executrix had resigned and occupied no relationship of trust to the property or to the beneficiaries under the will. In the case of *Sorrell* v. *Sanders,* 65 Miss. 288, there was a purchase by an innocent third person, and the sale was sustained as to the innocent purchaser, but not as to the administrator who was guilty of the fraud. In other words, outside of the relationship which the appellees and their predecessors in title bore to the title to the property as remaindermen, which absolved them from the duty to sue, in every case where fraud has been shown, or facts which would put a person on notice, the statutes of limitation have been held not to apply. Such statutes are not enacted as establishing asylums in cities of refuge, and as constituting covers for fraudulent wrongdoers and their successors. Speaking generally, however, of statutes of limitation, as applied to the facts

of this case, the court expressly held on the former appeal, that on principles fully established, appellees here are not barred by any statute of limitation. Such statutes, while statutes of repose, are statutes of repose only for the righteous, and under the facts of this case, they cannot avail for the protection of appellant, and to the disherison of appellees.

There is a further contention which we present as conclusive of the case for appellees. The principles involved in this case have been considered by the court on two former occasions, and the two decisions of the court rendered at that time constitute the law of this case. Nothing which was said in the first opinion, has been held not to be the law on the second consideration, and when the second opinion was delivered. Together, they constitute the law of this case.

Argued orally by *Julian C. Wilson & J. Morgan Stevens,* for appellant and *W. R. Woods & J. W. Cutrer,* for appellees.

SMITH, C. J., delivered the opinion of the court.

The case made by the record is this: In February, 1916, L. Carlton Belt, a citizen and resident of Bullock county, Ga., died seized and possessed of certain land in Tallahatchie county, Miss., leaving as his heirs at law his widow, Elizabeth T. Belt, and three children, Willie B. Belt, Lloyd J. Belt, and Talbot C. Belt, minors. The land was purchased by Belt from W. A. Jenkins, and there remained a balance due by Belt to Jenkins for the purchase money thereof at Belt's death. In September, 1869, Jenkins being then dead, his administratrix, Margaret Jenkins, exhibited a bill in the court below to which the widow and children of Belt were made parties defendant, setting forth the amount due by Belt on the purchase price of the land. Belt left a last will and testa-

ment in which his wife, Elizabeth T. Belt, is designated as executrix, but which had not been probated in Mississippi, and praying for a sale of the land for the payment of the balance due on the purchase money thereof. This bill alleged that the defendants therein were "citizens of the state of Georgia, residing at Augusta, said state."

On this bill a decree *pro confesso* apparently against all the defendants was taken, reciting that:

"It appearing to the court that the defendants in the above suit are non-residents and that they have been cited to appear at the present term of this court, by publication, made according to law, and the order of publication sent by mail to their place of residence in the state of Georgia, as required by law," etc.

On final hearing this decree was dealt with as if it were against Mrs. Belt alone.

A motion was made for the appointment of D. M. White. clerk of the court, as guardian *ad litem* of Willie B., Lloyd J., and Talbot C. Belt, who were then minors, and while the record discloses no appointment of the clerk as such guardian he filed an answer and thereafter acted in the cause as such guardian. In December, 1870, the cause was heard on the bill, decree *pro confesso* as to Mrs. Elizabeth T. Belt, the answer of the guardian *ad litem* of the minor defendants, exhibits, and the report of the master to whom the matter had been referred for the statement of the account sued on, and a decree was rendered adjudging the amount due thereon to be four thousand two hundred seventy-five dollars and sixty cents and appointing the clerk of the court as a commissioner to sell the land unless the balance decreed to be due thereon should be paid within thirty days, and to apply the proceeds to the payment of the debt sued on and the costs of suit, and the remainder, if any, to Elizabeth T. Belt. A report of the sale under this decree was made in the name of "D. M. White, Clerk and Master, by G. A. Nicholetts, D. C. & M.," setting forth the sale of

the land to Elizabeth T. Belt for the sum of two hundred and twenty-five dollars, on which a decree was rendered confirming the sale reciting:

"And it further appearing to the satisfaction of this court that D. M. White, former clerk of this court and the commissioner by whom said report of sale has heretofore been deposited in this court has been removed from the clerkship of this court, it is therefore ordered, adjudged and decreed that G. A. Nicholetts, the clerk of this court be appointed the commissioner of this court to convey by deed said lands to said purchaser, Elizabeth T. Belt."

Nicholetts executed a deed to Mrs. Belt pursuant to this decree, and the land was thereafter sold under a mortgage executed by Mrs. Belt to Eve and purchased by Eve. In 1901, 1903 and 1904 Joseph C. Adams, the appellant in the case at bar, became the owner of the land by direct and mesne conveyances from Eve. He purchased the land after being advised by a competent and reputable attorney, who made an abstract of the title thereof for him, that the title thereto was good, and without any notice of any defect in the proceeding by which the Jenkins' vendor's lien was foreclosed or of any claim of the appellees thereto. The appellant has been in actual possession of the land since he purchased it, residing on it most of the time.

In November, 1917, an original bill of complaint was exhibited by Lloyd J. Belt and C. T. Belt, residents and citizens of the state of Georgia against Adams, the appellant, alleging in substance what has hereinbefore been set forth, and in addition thereto charging: That L. Carlton Belt left a will by which he among other devises and bequests devised the land here in controversy to his widow, Elizabeth T. Belt, who was also named as executrix in the will, for life, with remainder at her death to his "then surviving children and the children, if any, of such as may have died before her," which will was probated at Belt's residence in Bullock county, Ga., but not

in Mississippi. That no process was served on or publication made for the defendants in the proceeding by which the land was sold under the Jenkins' vendor's lien. That Mrs. Elizabeth T. Belt died on February 7, 1917. That Willie B. Belt died prior thereto leaving no child or children. That Talbot C. Belt died prior thereto leaving as his sole and only heir his son, C. I. Belt. That the balance due Jenkins by L. Carlton Belt on the purchase money of the land was paid by Elizabeth T. Belt in February, 1871, after a decree for the sale of the land had been rendered, but before the sale had been made. The prayer of the bill is that the decrees under which the land was sold be set aside and the deeds under which Adams claims title thereto be canceled, and that the appellees be decreed to be the owners of the land, and for an accounting by Adams for the rents and profits thereof.

A supplemental bill set forth, among other things, that since the filing of the original bill Lloyd J. Belt has died intestate leaving as his heir at law his widow, Susan W. Belt, and praying that she be made a party complainant in the cause.

A demurrer interposed to this bill was sustained but on appeal to this court the decree was reversed and the cause remanded, as will appear from 124 'Miss. 194, 86 So. 584, and 125 Miss. 387, 87 So. 666, wherein the allegations of the bill are set forth more in detail than they have been herein. On the return of the case to the court below Adams answered the bill, and the cause was heard on bill, answer, and proof resulting in a decree in accordance with the prayer of the bill, from which Adams has appealed.

The will of L. Carlton Belt was not probated in Mississippi until after the death of Elizabeth Belt in 1917.

The grounds on which it is sought to reopen the orders and decrees in the case of *Jenkins* v. *Belt* are: (1) The recital in the *pro confesso* decree that the defendants "have been cited to appear at the present term of this

court, by publication, made according to law, and the order of publication sent by mail to their place of residence in the state of Georgia, as required by law," is false and that no legal publication for the defendants was in fact made; (2) that the balance due Jenkins by Belt on the purchase of the land was paid by Belt's administratrix after the rendition of the decree for the sale of the land and before the sale thereunder was made; (3) that the same person, D. M. White, clerk of the court, was appointed both as guardian *ad litem* of the minor defendants and as commissioner to sell the land; (4) the sale of the land was in fact made not by White, who was appointed as commissioner for that purpose, but by his deputy clerk, Nicholetts; (5) the price brought by the land at the sale was wholly inadequate; (6) that Mrs. Belt was disqualified to purchase the land because she was the executrix of the estate of L. Carlton Belt of which estate the land was a part.

In support of the allegation of the bill that publication was not made for the defendants in the case of *Jenkins* v. *Belt,* the minutes of the court below covering the period during which the cause was pending, most of which were made exhibits to the bill, were introduced in evidence, and there appears therein in addition to the orders and decrees hereinbefore referred to an order in the clerk's vacation minutes reading as follows:

"Order taken at rules, third Monday of October, 1870, *Margaret Jenkins, Administratrix,* v. *Elizabeth T. Belt.*

"On opening the bill in this cause it appearing that the defendants are nonresidents of this state and are citizens of the state of Georgia, and of the city of Augusta, it is therefore ordered that notice be published in the Tallahatchie News, a weekly paper published in the town of Charleston, in Tallahatchie county, for four consecutive weeks, to appear at the next November term of the chancery court for said county to plead, answer or demur to the said bill of complaint, or same will be taken for con-

fessed, and it is further ordered. that a copy of this order be sent by mail, according to law, to said defendants, directed to them at said city of Augusta, in said state of Georgia.''

. This order was not signed by the clerk, was not con-firmed by the court in term time, is in the handwriting of the complainant's solicitor in the case of *Jenkins* v. *Belt,* and the order preceding it, and the one immediately fol-lowing are both dated during the month of September. All of the other vacation orders of that period appear in the handwriting of the clerk or signed by him, and seem to have been acted on by the court in term time. The vaca-tion minutes of the clerk contain several blank spaces and one entire blank page. This order does not appear in the final record made by the clerk of the proceeding in the case. It was not made an exhibit to the bill, and con-sequently was not before the court on the former appeal herein. There is no copy of the publication for the de-fendants in. the case of *Jenkins* v. *Belt* in the file thereof, but there is therein a proof of publication by the printers and a receipt for their fees therefor.

On December 7, 1870, the clerk of the court below made and filed the following affidavit:

''*Margaret Jenkins, Adm'x,* v. *Elizabeth T. Belt et al.*

''This day personally appeared in open court D'. M. White, clerk of this court, who makes oath as required by the rule of this court that he forwarded by mail as re-quired by law to the defendants in the above cause at their stated residence, Augusta, Georgia, the order of publication taken at rules at the above cause.

''[Signed]     D. M. WHITE.

''Sworn to and subscribed before me this the 7th day of December, 1870.

''[Signed]     J. F. SIMMONS.''

The statute in force when this case was pending is as follows:

''When it shall be made to appear to the satisfaction

of the judge, by affidavit or otherwise, that any defendant to a suit in chancery, is out of the state, or a nonresident thereof, or cannot, upon due inquiry, be found therein, an order may be made directing such defendant to appear, and plead, answer or demur, to the complainant's bill, at a certain day therein to be named, being a return day of the court, not less than two nor more than six months after the date of the order, which order shall, within twenty days thereafter, be personally served on such defendant by delivery of a copy thereof to him, or be published in one of the public newspapers of this state, designated in such order, for four weeks successively, at least once in each week; and such order shall also be served, or published, in such other manner as may be therein directed. Such orders of publication may also be entered at rules to be held in the clerk's office, subject to the control of the court," etc. Rev. Code 1857, chapter 62, art. 34.

An amendment to this statute provides:

"That it shall not be necessary to take orders of publication for absent or nonresident defendants, before the clerks at rules, but the same may be taken at any time in the office, before the clerk, whether the same be at rules or not; and the order, when so taken, shall be entered on the minutes by the clerk, subject to the control of the court;" etc. (Laws 1867, chapter 294.)

On this evidence the contention of the appellant is that no publication was in fact made, and, if made, was not made pursuant to a valid order therefor, the order purporting to have been made by the clerk therefor having been in fact entered on the minutes without authority so to do.

Assuming, as was held on the former appeal, that this is a direct and not a collateral attack on the decree in the case of *Jenkins* v. *Belt*, the recital in the order hereinbefore set out that publication for the defendants in that case had been in fact made is not conclusive, but the

burden of showing its falsity is on the appellees, the complainants in the court below, and it must be accepted as true unless the evidence to the contrary is clear and convincing. The absence of the clerk's signature to the order for publication is not material as his signature thereto was not required by the statute, and, while the facts hereinbefore set forth may be sufficient to arrest attention and cast doubt upon the validity of the order, they are wholly insufficient to overflow it after the lapse of half a century and in the face of the solemn adjudication of the court that the defendants "have been cited to appear at the present term of this court by publication made according to law and the order of publication sent by mail to their residence." That recital not being proven to be false must be accepted as true, from which it follows that the court acquired jurisdiction of the defendants, and consequently the decrees rendered pursuant thereto must remain in force unless they can be set aside on some other ground.

Our holding that publication was made for the defendants in the case of *Jenkins* v. *Belt* disposes of the objection here raised to the validity of the decree therein rendered for the sale of the land, so that we come now to the objections raised to the validity of the subsequent orders and decrees therein made.

On the former appeal herein it was held that the other alleged defects in the orders and decrees in the case of *Jenkins* v. *Belt* are not such as would render them void, but voidable only (125 Miss. at page 390, 87 So. 666), so that at the threshold of the appellees' case lie these orders and decrees which must be set aside before any question can arise as to whether or not the appellees are otherwise barred from recovering the land. The first question that presents itself in this connection is: Are the appellees barred by the lapse of time from obtaining a suit to annul these orders and decrees? In determining this question the fact that the appellees' right under the

will of L. Carlton Belt to the possession of the land may
not have accrued until the death of Mrs. Elizabeth T.
Belt in 1917 is of no consequence, for their right to annul
these orders and decrees is in no wise dependent on their
right to the possession of the land, or rather upon the
time when that right may have accrued. What was said
in this connection on the former appeal was there ma-
terial, for it then appeared from the allegations of the
bill that publication for the defendants in *Jenkins* v. *Belt*
had not been made, which, if true, would have resulted
in all of the orders and decrees therein rendered being
void. It is true that the relief here sought is both the
annulment of the orders and decrees under which the
land was sold and the recovery of the possession of the
land. But the joinder of the two in one suit cannot affect
the time within which a suit to annul the orders and de-
crees must be brought. *Brooks* v. *Spann,* 63 Miss. 198.

In deciding the question now under consideration we
will leave out of view section 1265, Code of 1871, which
now appears as section 646, Code of 1906 (section 408,
Hemingway's Code), and also the effect, if any, of the
failure of the minor defendants to appeal the case of
*Jenkins* v. *Belt* to this court within the time allowed them
therefor after attaining their majority by section 2161,
Code of 1871, which now appears as chapter 222, Laws
of 1916 (Hemingway's Code, section 2476). If either of
these statutes apply here, the appellees cannot of course
maintain this suit.

While we have no statute specifically prescribing the
time within which a suit to annul a decree must be
brought, the court by analogy will limit the time therefor
to the time prescribed by the statutes for bills of review,
appeals to this court, and similar proceedings. The long-
est period of time within which proceedings to reopen
a decree can be begun is that provided for a bill of re-
view and is the period that must control here. *Brooks*
v. *Spann,* 63 Miss. 198; *Metcalfe* v. *Perry,* 66 Miss. 68,

5 So. 232. That period under the present statute (section 3111, Code of 1906; Hemingway's Code, section 2475) is two years from the rendition of the decree saving to minors a like period after attaining their majority.

Conceding for the sake of the argument that concealed fraud is here charged, the rule thereby sought to be invoked, that the limitation on the right to bring a suit to annul a decree commences only when the fraud on which the suit is predicated is or ought to have been discovered, cannot apply here, for defendants in the cause in which the orders and decrees here sought to be annulled were rendered were dead when the cause in which the decree here appealed from was rendered was tried in the court below, and it does not appear from the evidence that they did not know of the matters on which the charge of fraud is predicated. Moreover the rule of concealed fraud cannot apply to those things that were here openly done or which appear of record. *Thornton* v. *City of Natchez,* 88 Miss. 1, 41 So. 498; *Norris* v. *Haggin,* 136 U. S. 386, 10 Sup. Ct. 942, 34 L. Ed. 424.

This disposes of all of the grounds on which the orders and decrees rendered in *Jenkins* v. *Belt,* are sought to be annulled except that when Mrs. Belt purchased the land at the sale she was the executrix of the will of her husband, L. Carlton Belt, by which the land was divested as hereinbefore set out. What has just been said applies to any right the minors may have had to have the decree confirming the sale of the land set aside because the purchaser thereof was the executrix of the estate of which the land formed a part, and the only other right they could have had because of the purchase of the land by the executrix was to institute proceedings within ten years after attaining their majority to have her decreed to hold the land in trust for them. *Belt* v. *Adams,* 125 Miss. 390, 87 So. 666; section 3125, Code of 1906 (Hemingway's Code, section 2489).

In any aspect of the case the appellants could not now

maintain a suit to annul the orders and decrees under which the land was sold, even if it had remained in the hands of the purchaser at the sale. Consequently we have left out of view the fact that the appellant is a subsequent purchaser for value.

*Reversed and bill dismissed.*