WAX LUMBER COMPANY *v.* NETTERVILLE, et ux.

No. 40735 April 21, 1958 102 So. 2d 185

*Clay B. Tucker,* Woodville, for appellant.

*Richard T. Watson,* Woodville, for appellee.

Kyle, J.

This case is before us on appeal by Wax Lumber Company, a partnership composed of Louis Wax, Mary Posey Wax and Louis Wax, Jr., complainant in the court below, from a decree of the Chancery Court of Wilkinson County sustaining a demurrer to the bill of complaint filed by the complainant against B. B. Netterville and his wife, Alma H. Netterville, defendants in the court below, and dismissing the bill of complaint.

The complainant alleged in its bill that on April 25, 1953, the complainant purchased from the defendants all hardwood trees of every kind and species 12 inches or more in diameter across the stump, and all pine trees 10 inches or more in diameter across the stump, on certain tracts of land, situated in Wilkinson County, containing approximately 205 acres, said land being fully described in the bill of complaint; and that the defendants executed and delivered to the complainant a deed of conveyance of said timber, with the right of ingress and egress to, on, over and across the above described land for a period of four years from and after April 25, 1953, for the purpose of cutting and removing said trees, as fully shown by copy of said timber deed attached to the bill of complaint and filed as an exhibit thereto.

The complainant further alleged in its bill, that the complainant, on or about the 8th day of December, 1956, well knowing that the period of time allowed for the cutting and removal of the trees so purchased would expire on April 25, 1957, and desiring not to cut the trees within that period of time unless it had to do so, had its agent and timber foreman, E. H. Spillman, contact the defendant B. B. Netterville to ascertain if it was agreable to the defendant to grant an extension of time for the cutting and removal of said trees for an additional term of one year; and that the said B. B. Netterville indicated to the said E. H. Spillman that for an additional sum of $162.50, or five per cent of the purchase price paid for

said trees, it would be agreeable to the said defendant to extend the time within which the complainant would be permitted to cut and remove the trees for a term of one year from April 25, 1957; that the complainant thereupon issued its check on the Commercial Bank of Woodville, Mississippi, dated December 8, 1956, payable to the said B. B. Netterville for the sum of $162.50, which check had plainly written on the face thereof, the following: "Extension timber contract home place to 4/25/58;" and that said check was on said date, or in a day or two thereafter, delivered personally to the said B. B. Netterville by the said E. H. Spillman; that the said B. B. Netterville, by the said E. H. Spillman; that the said B. B. Netterville, well knowing that the check was tendered to him for the extension of time for the cutting and removal of the trees of one year, accepted the said check from the said E. H. Spillman, without comment, and willfully, knowingly, intentionally and deliberately kept and retained said check, thereby intentionally and deliberately leading the complainant to believe that the additional period of time within which to cut and remove said trees had been granted; and that the said B. B. Netterville kept said check without cashing it from about December 8, 1956, until about April 29, 1957, which latter date was after the termination date stated in the timber deed, and then had his attorney return said check to the complainant by mail and by letter inform the complainant that no agreement had been made to extend the time for the cutting and removal of the timber, and that since the deed did not contain any provision for extending the time for cutting the timber, the removal period had expired. Copies of the above mentioned check for the sum of $162.50, and the letter written by the defendants' attorney to the Wax Lumber Company on April 29, 1957, were also attached as exhibits to the bill of complaint.

The complainant further alleged that it had on deposit in the bank on which the check was drawn, at all

times between December 8, 1956, and April 29, 1957, a sufficient amount of money to pay said check, and relying on the agreement of the defendant B. B. Netterville to grant the complainant an extension of time from April 25, 1957, to April 25, 1958, within which to cut and remove the trees purchased by the complainant, and the acceptance and retention of said check by the said B. B. Netterville, the complainant refrained from entering upon the land and removing said trees between December 8, 1956, and April 25, 1957, as it could easily have done and would have done had the defendant B. B. Netterville returned the check within a reasonable time after December 8, 1956, as he should have done, if he had not agreed to and did not intend to grant the extension of time for removal of said trees; that by his said action in retaining said check until after the expiration dated named in said deed, without informing and advising the complainant that there was no agreement made to extend the time for cutting and removing said trees, as stated on the check, the defendants held title to the said trees in trust for the complainant, with the right of the complainant to cut and remove said trees within a period of one year, or within a reasonable period of time to be fixed by the court.

The complainant therefore prayed that the defendants be summoned to appear and answer the bill of complaint, but not under oath, such oath being waived, and that on the final hearing the defendants be compelled to execute to the complainant an instrument granting the complainant an additional period of time of one year, or a reasonable period of time, from and after the date of the decree, within which the complainant should be authorized to enter upon the land and cut and remove the trees, without further compensation to be paid to the defendants for such extension of time, ''because of the expense forced on complainant by the fraudulent actions of the defendant, B. B. Netterville, in keeping and retaining

the check as herein alleged.'' The complainant also prayed for general relief.

The defendant, B. B. Netterville and his wife, Alma H. Netterville, in their general demurrer, alleged that there was no equity on the face of the bill of complaint, and that the bill stated no ground of equitable jurisdiction and no cause of action against the defendants or either of them. Several other grounds of demurrer, which were for the most part merely technical grounds, were also stated.

The appellant's attorneys argue in support of their contention that the chancellor erred in sustaining the general demurrer, that the permission granted by Netterville to the complainant to cut the timber within one year after the expiration of the four years provided for in the timber deed, was in legal effect a license, and was good and valid until revoked; that to permit the appellees to revoke the license granted for an additional one year, under the facts alleged in the bill of complaint, would result in the perpetration of the rankest kind of fraud upon the appellant, to its great damage and to the great financial benefit of Netterville; and that the appellees are estopped by Netterville's conduct from exercising the right to revoke the parole license so given to the appellant to cut and remove the trees within an additional period of one year.

The appellees' attorneys invoke the Statute of Frauds; and in reply to the argument made on behalf of the appellant, the appellees' attorneys say that the contract upon which the complainant's suit is based is an oral contract upon which no action can be brought, according to the terms of the statute itself (Section 264(c), Code of 1942), and that no facts are alleged in the bill to take the transaction out of the operation of the statute. The appellees, attorneys also say that the bill does not show that the appellee, Alma H. Netterville, was a party to any agreement, either written or oral, concerning an extension of time for the cutting of the timber.

We think the chancellor erred in sustaining the demurrer to the bill of complaint. The case is one in which all the facts ought to have been developed under an answer. Griffith, in his Chancery Practice, says: ''In accordance with the trend of modern judicial opinion it has been definitely established as a rule by our latest cases that attempt should not be made to settle close and difficult questions of law and right on a demurrer. If the demurrer raise merely a doubtful question or if the case be such that the cause of justice will probably be promoted by a determination of the ultimate right only on answer and proof, the court ought to exercise a fair judicial discretion to that end, although it may be that in technical point the grounds of the demurrer are sustainable in strict law.'' Griffith's Mississippi Chancery Practice, Second Edition, 1950, p. 297, Demurrers, par. 310. See also Federal Land Bank v. Fidelity & Deposit Co., 165 Miss. 715, 147 So. 917; Gully v. Bridges, 170 Miss. 891, 156 So. 511; Taylor v. Twiner, 193 Miss. 410, 9 So. 2d 644; White v. Turner, 197 Miss. 265, 19 So. 2d 825.

 The bill of complaint in this case contains several imperfections. The bill was not filed in the name of the individual partners, as required by McCullar v. Mink, 121 Miss. 829, 83 So. 907. But the partners are named in the bill, and no point has been made as to their right to sue in the partnership name. The bill does not state whether the title to the land was in Netterville alone or in Netterville and his wife. It does not state whether Netterville acted for himself in the sale of the timber and in the matter of granting additional time to the complainant for the cutting of the timber, or whether he acted for himself and his wife. But we think the bill, notwithstanding its imperfections, was sufficient to withstand a general demurrer, and to require an answer.

The bill alleged that Netterville, well knowing that the check had been tendered to him for an extension of time

for the cutting of the trees, accepted the check from Spillman without comment, and kept and retained the check for a period of more than four months "thereby willfully, knowingly, intentionally and deliberately leading complainant to believe that the additional period of time of one year * * * had been granted." The bill further alleged that the complainant relied on the agreement and Netterville's acceptance and retention of the check, and refrained from entering upon the land and removing the timber between December 8, 1956, and April 25, 1957, as he could have done and would have done had Netterville returned the check to the complainant within a reasonable time. And finally, the bill alleged in the prayer for relief that Netterville's actions in keeping and retaining the check under the circumstances stated above were fraudulent. We think there was enough in the bill to reveal equitable merits, certainly as to Netterville himself, and as to his wife also, if she owned any interest in the land and he was acting as agent for her. The demurrer was a general demurrer by the two codefendants, and even if good as to one of the defendants, but not good as to the other, should have been overruled. Griffith's Mississippi Chancery Practice, Second Edition, 1950, pp. 291, 292, par. 305.

Reversed and remanded.

*McGehee, C. J.,* and *Roberds, Lee, Arrington, Ethridge,* and *Gillespie, JJ.,* concur.

HALL, J., dissenting:

I respectfully dissent from the controlling opinion in this case and I do so for the reason, as stated in the controlling opinion, that the bill of complaint in this case contains several imperfections.

The bill does not allege whether B. B. Netterville or whether his wife Alma H. Netterville was the owner of the land. They both joined in the original timber deed

but when the appellant desired an extension of the time limit specified in the deed, the matter was never mentioned to Mrs. Netterville. The bill alleges only that a representative of Wax Lumber Company mentioned the matter of an extension to B. B. Netterville, and that he "indicated" that he would be willing to give an extension for a specified consideration. Accordingly on December 8, 1956, Wax Lumber Company issued its check payable only to B. B. Netterville and wrote on the check "Extension timber contract Home Place to 4-25-58." The check was delivered to B. B. Netterville and nowhere was it alleged or even hinted that Mrs. Netterville was a party to the transaction.

In the case of Drane v. Wax Lumber Co., 203 Miss. 888, 35 So. 2d 63, Wax Lumber Company did exactly the same thing that it did in this case with this difference: It made the check for the extension of time payable to all of the grantors in the original timber deed, and another distinct difference between the two cases is that all of the payees in the check endorsed it and cashed it. This check had written on it, "Extension time remove timber to 12-11-44, Deerfield Plantation containing 1584 acres, more or less, Lots 1, 2, 3 and 4 Section 57 containing 177 acres, more or less, Township 5 North, Range 1 West". This Court held in effect that the endorsing and cashing of the check, payable to all of the grantors in the original deed, with the notation quoted being on the check, was in effect an agreement to extend the time. We have no such situation in the case here presented. There is simply nothing to charge Mrs. Netterville with any sort of notice that Wax Lumber Company even wanted an extension of time.

Wax Lumber Company is an old established concern and has had many transactions involving the purchase of timber as will appear from a review of the cases in which it has been involved as appearing in the Mississippi Reports. Its officials knew that in order to con-

stitute a valid conveyance or extension of the time in which to remove the timber, there must be something in writing, as required by the statute, but for some reason it chose to let the matter rest purely upon a check which it had issued to B. B. Netterville and it never one time even checked its bank statement to find out that he had not cashed the check which had been delivered to him. I do not think that Griffith's Mississippi Chancery Practice as quoted in the controlling opinion is here applicable. It refers to settling by demurrer close and difficult questions of law without a development of the facts. I do not think that the question of law here involved is either close or difficult. Much more in point is Griffith's Mississippi Chancery Practice, 2d Ed., Section 56, which is as follows:

"It is manifest therefore that the established rule should be, as it is, that in order to institute a suit in our court of chancery, the party who seeks the aid of the court and who would have relief therein—and whom we call the complainant—must as his first step exhibit therein a formal written statement—called the bill of complaint —setting forth in an accurate and definite manner a complete narrative statement of all those material facts which are necessary to constitute his cause of action. That he shall state all those facts which are essential to his cause is an obvious requirement; for if he may omit part of them, what part may he omit, and if he may omit one part, why may he not omit two or three parts, and if two or three why may he not with equal reason omit them all? And that in stating them he shall do so in a clear and definite manner, so that neither the court nor the defendant shall have to grope about in obscurity or be required to guess at what are the facts and grounds of complainant, is an equally obvious requirement for if the facts are so stated that it cannot be told what they mean they had as well be omitted."

A mere reading of the bill of complaint shows that the complainant in the lower court did not (in the words of

Judge Griffith) set forth, ''in an accurate and definite manner a complete narrative statement of all those material facts which are nceessary to constitute his cause of action''. In my opinion the bill is fatally defective and the demurrer in the lower ·court was properly sustained.

HOLMES, J., joins in this dissent.