McMahon *v.* McMahon

No. 42126 February 12, 1962 137 So. 2d 520

*Joe G. Moss,* Raymond; *T. Eugene Caldwell,* Jackson, for appellant.

*Wells, Thomas & Wells, Roland D. Marble,* Jackson, for appellee.

KYLE, J.

This case is before us on appeal by Mrs. Lydia Schlosser McMahon, complainant in the court below, from a decree of the Chancery Court of the First Judicial District of Hinds County, sustaining a demurrer to the bill of complaint filed by the complainant against W. A. McMahon, defendant in the court below, seeking to establish the complainant's title to an undivided one-fourth interest in a 160-acre tract of land situated in the First Judicial District of said county, less and except a portion of said 160-acre tract, containing approximately 75 acres, sold and conveyed by the defendant to the Mississippi State Highway Commission, and seeking to recover a money judgment against the defendant for an amount equal to a one-fourth part of the purchase price paid to the defendant for the 75 acres sold and conveyed to the State Highway Commission, and seeking to establish a lien on the remainder of said 160-acre tract to secure the payment of said money judgment.

The bill of complaint was filed by the complainant on March 10, 1961.

The complainant alleged in her bill of complaint that she had acquired title to an undivided one-fourth interest in the above mentioned 160-acre tract of land as devisee under the will of her late husband, James Hutson McMahon, also referred to in the record as ''J. H. McMahon'', who died testate on February 19, 1942, while living with the complainant at Frenier, Louisiana, in St. John the Baptist Parish; that said land had been

conveyed to Mrs. Malissa McMahon, the defendant's mother, and her four children, J. H. McMahon, W. A. McMahon, N. G. McMahon, and Mrs. Lucille McMahon by W. B. Taylor by special warranty deed dated January 27, 1904; that the defendant W. A. McMahon resided on said land with his mother, Mrs. Malissa McMahon, until her death in 1929, when title to said land became vested in the four children as tenants-in-common each owning an undivided one-fourth interest therein; and that the defendant continued to reside on the property after his mother's death. The complainant further alleged that a few weeks after the death of her husband in 1942, she received a letter from her brother-in-law, Neil G. McMahon, stating that the defendant wished to talk with her, and that the defendant would let her have some money, if she were in need of money; that the defendant thereafter devised means to have the complainant come to Jackson, Mississippi; and that, on August 12, 1944, the complainant received a letter from an attorney representing the defendant requesting certain papers and information in connection with the succession of the James Hutson McMahon Estate in Louisiana. The complainant further alleged that, pursuant to the request of the defendant and the defendant's attorney, the complainant came to Jackson and went directly to the office of the defendant's attorney, where she was confronted by the defendant and said attorney and was told that she had not made any reports in Mississippi, where she owned property, that she was trying to beat the government out of taxes, and that unless she immediately started administration proceedings she would be put in jail. The complainant further alleged that she was placed in a state of shock and was in great fear, and because of the fiduciary relationship existing between her and her brother-in-law and the above mentioned attorney, she agreed to carry out their wishes by filing a copy of the last will of her deceased

husband and petitioning for letters of executorship in the Chancery Court of Hinds County, and that, in the course of said administration, she was required to sign numerous petitions, affidavits, notices and other papers, not having an opportunity to read such papers or to know what was in such papers, but being advised by the defendant and said attorney that all was a formality, and that they were doing her a favor in keeping her out trouble. The complainant further alleged that after her husband's death she suffered a broken hip and a stroke, and developed pneumonia; that she was hospitalized in the City of New Orleans and in the City of Hammond, Louisiana; and that since that time her health had been such that it was necessary that she be cared for by registered nurses and by practical nurses; that she became despondent and suffered a loss of memory, and for many years was unable to attend to her affairs.

The complainant further alleged that sometime during the month of March 1959 she came to Jackson with a practical nurse who was caring for her, and while in Jackson on that trip she stated to an attorney that she was a part owner of some property near the City of Jackson, at a place called Van Winkle, and she asked the attorney to examine the records in the courthouse and find out how many acres she owned; that the attorney examined the records and discovered that the defendant had executed a deed conveying approximately 75 acres of the above mentioned 160-acre tract of land in which the complainant owned an undivided one-fourth interest to the State Highway Commission for a consideration of $136,000, and that the attorney in examining said records also found a recorded quitclaim deed dated October 10, 1944, purportedly signed by the complainant, conveying to the defendant all her right, title and interest in said 160-acre tract of land, copies of each of said deeds being attached as exhibits to the bill of complaint. The complainant further alleged that she

had not signed said quitclaim deed, and that said deed was void; that said deed was without consideration; and that the complainant was not in the State of Mississippi on the date said deed appeared to have been signed and acknowledged.

The complainant further alleged ''that said purported quitclaim deed was not signed by complainant, but that if said instrument does bear her true signature, the same was obtained by fraud and duress on the part of defendant; * * * that a fiduciary relationship existed between complainant and defendant, her brother-in-law, * * * and that her affairs in Mississippi were in his own personal and peculiar knowledge; that * * * complainant did not have knowledge of all of the facts; that she was, of necessity, required to rely on his judgment and statements, and that in securing the quitclaim deed, if in truth and in fact the same was executed by complainant, which she denies, it was done so at a time when complainant was required by defendant and his attorney to execute many instruments which she believed to be in connection with her late husband's estate.''

The complainant further alleged that she was the owner of an undivided one-fourth interest in the 75 acres of land which the defendant sold to the State Highway Commission for a consideration of $136,000.00, and that she was entitled to a one-fourth part of said $136,000.00, being the sum of $34,000.00, which was unjustly withheld from her; and that judgment should be rendered in favor of the complainant against the defendant for said sum of $34,000.00, plus interest. The complainant further alleged that she was the owner of an undivided interest in the remaining part of the said 160-acre tract of land which had not been conveyed to the State Highway Commission, and that the court should enter a decree adjudicating that she was the owner of an undivided one-fourth interest in said remaining part of said 160-

acre tract of land, and imposing a lien upon said remainder of said 160-acre tract to secure the payment of the money judgment for said sum of $34,000.00.

The complainant in her prayer for relief asked that the court adjudicate that she was the owner of an undivided one-fourth interest in the above mentioned 160-acre tract of land, less and except that part conveyed to the State Highway Commission on July 27, 1959, and that the court enter a judgment for complainant against the defendant for the above stated amount of $34,000.00, with interest, and impose a lien on the remainder of said land to secure the payment of the said money judgment. The complainant also prayed for general relief.

The defendant filed an answer to the above mentioned bill of complaint and in his answer admitted that the complainant, upon the death of her husband, J. H. McMahon, in 1942, became a tenant-in-common with the defendant in the ownership of the 160-acre tract of land described in the bill of complaint. The defendant averred in his answer that the complainant executed a quitclaim deed to him on October 10, 1944, in which she conveyed to him all of her right, title and interest in the said 160-acre tract of land. The defendant denied that said quitclaim deed was obtained by fraud and duress on the part of the defendant or anyone else. The defendant denied that a fiduciary relationship existed between the complainant and the defendant at the time said deed was executed. The defendant denied that the complainant had ever suffered a loss of memory or had been unable at any time to attend to her affairs. The defendant admitted that he and his wife and his son Neil G. McMahon executed a deed conveying certain portions of said 160-acre tract of land to the State Highway Commission on July 27, 1959; but the defendant denied that the complainant was the owner of an undivided one-fourth interest in that part of the 160-acre

tract conveyed to the State Highway Commission, or the remaining part of said 160-acre tract.

By way of affirmative defense, the defendant averred in his answer that it was clear on the face of the bill of complaint that the complainant had delayed more than sixteen years in filing her suit to cancel or set aside the quitclaim deed executed by her on October 10, 1944; and that the complainant had been guilty of laches and was estopped from asserting any right to have the quitclaim deed held void or set aside; and that the defendant was barred of her right to sue by virtue of the ten years statutes of limitations, Sections 709 and 710, Mississippi Code of 1942.

The defendant also incorporated in his answer a general demurrer, in which he averred that there was no equity on the face of the bill, and two special demurrers, in which he averred by way of affirmative defenses that the bill of complaint showed on its face that the complainant's cause of action, if any, arose more than ten years before the date of the filing of her bill of complaint, and was barred by Sections 709 and 710, Mississippi Code of 1942, Rec., and that the bill of complaint also showed on its face that the complainant had been guilty of laches, and was estopped to complain of any alleged fraud or duress.

The only question presented for our decision on this appeal, is, whether or not the chancellor erred in sustaining the demurrer filed on behalf of the appellee.

We think the chancellor erred in sustaining the demurrer. The case, in our opinion, is one in which all the facts ought to have been developed under an answer.

Griffith in his Chancery Practice says: "In accordance with the trend of modern judicial opinion it has been definitely established as a rule by our latest cases that attempt should not be made to settle close and difficult questions of law and right on a demurrer. If the demurrer raise merely a doubtful question or if the

case be such that the cause of justice will probably be promoted by a determination of the ultimate right only on answer and proof, the court ought to exercise a fair judicial discretion to that end, although it may be that in technical point the grounds of the demurrer are sustainable in strict law." Griffith's Mississippi Chancery Practice, Second Edition, 1950, p. 297, Demurrers, par. 310. See also Federal Land Bank v. Fidelity & Deposit Co., 165 Miss. 715, 147 So. 917; Gully v. Bridges, 170 Miss. 891, 156 So. 511; Taylor v. Twiner, 193 Miss. 410, 9 So. 2d 644; Reed v. Reed, 197 Miss. 261, 19 So. 2d 745; White v. Turner, 197 Miss. 265, 19 So. 2d 825; Wax Lumber Company v. Netterville, 233 Miss. 350, 102 So. 2d 185.

 ██ The bill of complaint in this case contains many imperfections. Some of the material allegations of the bill are so vague and indefinite that it is difficult to determine from a reading of the bill the exact nature of the charges upon which the complainant expected to rely in proving her case; but notwithstanding its many imperfections, the bill, in our opinion, was sufficient to withstand a general demurrer.

The bill of complaint charged fraud and undue influence. The bill also charged by inference that the quitclaim deed, dated October 10, 1944, purportedly signed by the complainant, was a forgery. The bill also charged that the complainant had suffered a loss of memory, and for many years was unable to attend to her affairs; and the bill inferentially charged that the complainant had no knowledge of the existence of the quitclaim deed until sometime during the month of March 1959. The bill charged that a confidential relationship existed between the complainant and the defendant, who was her brother-in-law, at a time when there was great sorrow in her life, and that she was of necessity required to rely on his judgment and statements. Whether these charges were true or false could

be determined only by an investigation of the facts. Whether the complainant was barred of her right to sue by virtue of the doctrine of laches or the ten years statute of limitations, or whether the case was one of concealed fraud only recently discovered, were questions which could not be answered without a hearing of the case on its merits.

■■ The rule is that if there be sufficient equity on the face of the bill to require an investigation of the facts, in other words if the bill has some merit, and considered as a whole it shows a good cause of action, it will stand as against a general demurrer. Gully v. Bridges, 170 Miss. 891, 156 So. 511.

For the reasons stated above the decree of the lower court sustaining the appellee's demurrer and dismissing with prejudice the appellant's bill of complaint is reversed and the cause remanded.

Reversed and remanded.

*McGehee, C.J.,* and *Ethridge, Gillespie* and *Jones, JJ.,* concur.