## McMahon *v.* McMahon

No. 42792          November 18, 1963          157 So. 2d 494

*Joe G. Moss,* Raymond; *T. Eugene Caldwell,* Jackson, for appellant.

*Wells, Thomas & Wells, Roland D. Marble,* Jackson, for appellee.

McELROY, J.

This is an appeal from a decree of the Chancery Court of the First Judicial District of Hinds County, Mississippi. The bill of complaint of the appellant, Mrs. Lydia McMahon, alleged that a certain purported quitclaim deed dated October 10, 1944 was a forgery, asked that the same be canceled and that she be adjudicated the legal holder of an undivided one-fourth interest in certain real estate, and that a judgment be entered against the appellee in the sum of $34,000 plus interest from July 27, 1959 for one-fourth of the proceeds of part of the property, with a lien imposed on the remaining property.

This is the second time this appeal has come before the court. In the first trial the appellee incorporated a demurrer in his answer. The court sustained the demurrer and dismissed appellant's bill of complaint. This appeal was reversed and remanded in McMahon v. McMahon, 243 Miss. 89, 137 So. 2d 520. The allegations of the bill of complaint are well stated in this appeal.

When the bill of complaint was remanded the court allowed the appellant to amend her bill of complaint to show that a right-of-way agreement was executed by the appellee and others in favor of the power and light company to cross the land involved for a considera-

tion of $20,000, and praying for an additional judgment in the amount of $5,000 plus interest, and to make appellant's interest in said lands subject to the right-of-way, making the total sum of $39,000, and imposing a lien on the land until the amount is paid.

The court on motion of the appellee required the appellant to amend the bill of complaint: (1) that the quitclaim deed in question was a forged deed; or (2) that the quitclaim deed was signed by complainant as a result of fraud and duress.

The amended bill of complainant alleged that the quitclaim deed was secured by fraud and duress on the part of the appellee, that a fiduciary relationship existed between the parties at a time when there was great sorrow in her life and when her affairs were in a personal and peculiar knowledge of the appellee, and that she had signed said deed at a time when she was required by the appellee and his attorney to execute many instruments which she believed to be in connection with her late husband's estate.

At the time the case was set for hearing, which was around June 13, 1962, the appellee filed an answer to the amended bill of complaint to which he attached a written agreement alleged to have been entered into by the appellant and the appellee on the same date as the quitclaim deed was signed, that is, on October 10, 1944. That agreement, in part, is as follows:

"The undersigned, Mrs. Lydia Schloesser McMahon, has on this date executed a Quit Claim Deed to the undersigned, W. A. McMahon, on the N.½ of the S.½ of Section 12, Township 5, Range 1 West, in the First Judicial District of Hinds County, Mississippi and does herein release and relinquish unto the said W. A. McMahon, all rights, claims, and interest, if any, against all the assets and property owned by the Estates of John B. McMahon and Mrs. Malissa McMahon, deceased, in consideration of the said W. A. McMahon paying

all costs, expenses, and Attorneys fee and all Inheritance and Estate Taxes in connection with the Estate of James Hutson McMahon, deceased, being administered upon in the Chancery Court of the First Judicial District of Hinds County, Miss., at Jackson, Mississippi, and all costs and expenses in connection with the Probating of his will in said Estate, and in further consideration of the said W. A. McMahon relinquishing and forever waiving all claims for his services in managing the property and collecting rents and in having repairs made on the property of James Hutson McMahon, deceased, and Mrs. Lydia Schloesser McMahon in the City of Jackson, Mississippi and in the First Judicial District of Hinds County, Mississippi, and for his services in getting tenants for said houses and in paying taxes on same and in doing everything in connection therewith.

". . .

"The said Mrs. Lydia Schloesser McMahon hereby acknowledges payment in full of all sums of money due her deceased husband, James Hutson McMahon and herself for their interest in the property known as No. 938 Hunt Street, Jackson, Mississippi and being the sum of $2,000.00."

This agreement was sworn to by the parties.

Both appellant and appellee were advanced in years. In fact, the appellant had had a stroke and could hardly talk, and her evidence amounted to very little, if anything, in the trial of the case.

W. A. McMahon was called as an adverse witness and testified that he had operated the place as a farm since he was eighteen years of age, that he had been there for a period of around sixty-seven years, that he had exercised absolute control over the property for such period of time, and that after the death of his father and mother he took charge and operated the place; in fact, the only difference was that they were gone. Mrs.

McMahon was the widow of the brother of the appellee, Hut McMahon who died in the year 1942. Hut owned some property in Jackson and he collected the rents for him and paid the taxes for him and kept a set of books on it; there was some agreement to pay him 20% for this, but for some reason he had never charged this or taken it out of the rent checks as they were paid. He placed tenants on the property owned by the appellant, made repairs, paid the taxes and insurance, all without consulting the appellant, and she always accepted his judgment without question. He stated that sometime in 1944 Mrs. McMahon came up here to see something about selling some property, which Mr. Lewis wanted to know about, and he gave them their address, and that they met in Mr. J. Sivley Rhodes' office. He stated that he didn't have Mr. Rhodes as his attorney, but that he was there for Mrs. McMahon's attorney. He said that at that meeting some question came up about the one-fourth interest in the property, that he told her that since he had been taking care of the property for both her and her husband and that her husband had promised to pay him 20% for his services, that he was going to claim that against her if she was going to try to claim the property. He further stated that he told her in Mr. Rhodes' office that she was not entitled to a foot of the place, but he knew that the court would give it to her, and also told her that if she did not pay him for services he had rendered, he was going to file suit against the estate of her deceased husband.

Mr. McMahon stated that the deed of October 10, 1944 and also the contract signed at that time were outgrowths of this meeting in Mr. Rhodes' office, that he agreed to pay appellant's attorneys fees and all court costs in connection with appellant's husband's estate, not knowing what the amount might be, in return for the appellant conveying to him her interest in the property, that she was to give him a deed for some other

land for $2,000 as more or less part of the consideration, that he never did get the land deed, but he did give her a check for the $2,000 and he considered that as part of the consideration of her quitclaim deed here.

Since there was property in Jackson to be sold, it was necessary for the husband's will to be probated here, although he had lived in Louisiana. The will was admitted to probate in the chancery court around October 7, 1944. This deed was filed of record in the office of the chancery clerk of Hinds County, Mississippi on October 11, 1944, and was immediately recorded. The decree probating the will was entered around June 29, 1945, and about the same date appellant sold by warranty deed to W. E. Lewis and wife the lot which she had contracted to sell in August of 1944.

On December 27, 1946 the appellee bought out the interests of his remaining cotenants, Neil G. McMahon and Lucille McMahon McNeil. During all of this time, appellant continued to sell lots that she owned in Hinds County, which goes to show, and it is undisputed in the record, that the appellant knew the effects of signing the deed. She knew what she was doing and intended to sell her property.

It is undisputed that W. E. Lewis wanted to buy a lot from the appellant, that W. E. Lewis had as his lawyer J. Sivley Rhodes, to check the title and draw him a contract to purchase the lot from Lydia McMahon, and that W. E. Lewis introduced W. A. McMahon to John Sivley Rhodes, the attorney, that John Sivley Rhodes never represented W. A. McMahon, but did represent Mrs. Lydia McMahon as executrix of the estate of James Hutson McMahon, the deceased husband.

There is very little conflict of any testimony in the case occurring around the date of October 10, 1944. Mr. Rhodes' deposition was taken, but he was a very sick man at the time, had cataracts on his eyes, didn't see, and it seemed that his memory was very bad, in fact, he

didn't remember much about any of the occurrencies. At first he said there was nothing done in his office about the deed, then he finally stated that he couldn't remember anything that happened eighteen years ago, that his memory was very poor on the question.

However, there was other testimony introduced by Linton Godown that in his opinion the quitclaim and the agreement were typed on the same typewriter on which the papers in the Estate of James Hutson Mc-Mahon, Deceased, were typed, which estate was handled by John Sivley Rhodes; that all of the instruments were probably typed by the same typist.

In other words, the only testimony in this case was given by the appellee in the case, a man eighty odd years old, against whom a bill was drawn charging duress and force and threats which caused Lydia Mc-Mahon to sign the papers. His entire testimony is to the effect that he did not force Lydia McMahon to sign the quitclaim deed, agreement, or any other instrument, and that John Sivley Rhodes did not force her to sign anything. No one denied that the quitclaim deed and agreement were executed and acknowledged in the offices of Mr. Rhodes on October 10, 1944.

All of these events took place in 1944. Subsequently, in 1957, Mr. McMahon's wife lost her mind and memory, thirteen years after the deed was signed, and is now unable to testify.

The Mississippi Power & Light Company and the State Highway Commission have purchased a right-of-way through this land and paid a valuable consideration. A new home has been built on the land, and above all, the value of the land in 1944 was estimated somewhere, we would say, around $20,000, and now has approached somewhere over the $200,000 mark. Even the attorney, notary public, who took the acknowledgement on the quitclaim deed and the agreement, passed away in 1960,

sixteen years after the acknowledgment and just one year before the suit was filed by the appellant.

The appellant, in basing her claim for cancellation of the quitclaim deed on a charge of fraud and duress, abandoned the fact that she did not know about executing the paper, and charged the existence of a confidential relationship between herself and the appellee.

The appellee's contention was that there was no fraud or duress, that no confidential or fiduciary relationship ever existed between the appellant and appellee, and that the statute of limitation applied, that is, sections 709-710, Miss. Code 1942, Rec., and if that wasn't sufficient, the equitable doctrine of laches would bar the action of the appellant.

The Chancellor's opinion, in part, is as follows:

"This controversy is between an eighty year old complainant and a Defendant who is approaching his eighty-fifth birthday. It involves essentially a quitclaim deed executed on October 10, 1944, a deed on which light is thrown by an agreement executed on the same day, October 10, 1944, by Mrs. Lydia Schloesser McMahon and W. A. McMahon.

"The burden of proof of establishing a confidential or fiduciary relationship rests upon the Complainant or the one who asserts it. Once that fiduciary or confidential relationship is established, then certain presumptions come into play, but first the confidential or fiduciary relationship must be established. This does not involve a traditional or legal fiduciary or confidential relationship; it is not a relationship of attorney and client, doctor and patient, or trustee and cestui que trust, so, not being a confidential or fiduciary relationship in law, it must be established as a confidential or fiduciary relationship in fact.

". . .

"During this period of time from 1944 to 1954, there was no question of this quitclaim deed or this agree-

ment. There was no attempt to hide anything. The quit-claim deed was immediately placed of record after its execution; it was on the land records of this County for the world to see."

Finally the court concluded that Mrs. Lydia McMahon did execute the quitclaim deed, did execute the agreement on the same date, October 10, 1944, that these were arms length transactions with her brother-in-law and she knew exactly what she was doing and so intended the effect which these instruments carried; that she did receive consideration as recited over her signature in the receipt, release and agreement.

Even if what the court found to be true and correct were not so, the doctrine of laches, estoppel, and the statutes of limitation would have applied in this case and the complainant would have been forever barred by those doctrines and the ten-year statute of adverse possession from asserting any rights to this land, but the court finds and bases its opinion primarily on the fact that there was no confidential or fiduciary relationship established, and that these parties were dealing at arms length with each other.

The contention of the appellant in this case is based primarily on the question of concealed fraud. She cites sections 709 and 710 of Miss. Code 1942, Rec., and section 710 states in part: "but in every case of a concealed fraud, the right of any person to bring suit in equity for the recovery of land, of which he or any person through whom he claims may have been deprived by such fraud, shall be deemed to have first accrued at and not before the time at which the fraud shall, or, with reasonable diligence might, have been first known or discovered." The exception is to the effect that in case of concealed fraud, the right of a person to bring suit in equity for recovery of land of which he has been deprived by fraud shall be deemed to have first accrued at and not before the time which the fraud shall or with

reasonable diligence might have been first known or discovered. At one time there was a question whether these statutes actually applied in equity, but the question has been decided in the case of Neal v. Teat, 240 Miss. 35, 126 So. 2d 124.

In Griffith's Mississippi Chancery Practice, section 182, in part is found:

"Concealed fraud avoiding limitations must be averred and proved specifically, clearly and distinctly as in other cases charging fraud. . . . the bill must excuse the delay or avoid the limitations by specific averments of the facts and circumstances, precisely and definitely, which constitute the excuse."

This principle is supported in part by the case of Gordon v. Anderson, 90 Miss. 677, 44 So. 67. See also Note 173 A.L.R. 276.

In the case of Jones v. Rogers, 85 Miss. 802, 38 So. 742, which was taken to the U. S. Supreme Court on writ of error, suit was brought by certain heirs who alleged concealed fraud in handling of the estate of one of their ancestors, in which case all of the proceedings in the estate were duly recorded in the public records of the county where the action was brought within the state of Mississippi. In the course of the opinion the court lays down five facts which must be alleged in order for the complainant to take advantage of the exceptions in the statute of limitation, that is, concealed fraud. The five facts which must be alleged are, in the words of the court, as follows:

"To prevent this statute from beginning to run against them in favor of defendants, complainants must not only allege (1) fraud, and the facts or acts constituting it; (2) that these acts of fraud were committed by defendants, or some one in privity with them; (3) that they were concealed from complainants by defendants or their privies; (4) that complainants did not discover or know of this fraud over 10 years before instituting

their suit; but (5) they must also allege and show that they exercised reasonable diligence to discover it sooner, or that they could not, with reasonable diligence, have discovered it sooner.

"... In addition, the particular acts which constituted the fraud, combination, or confederacy are not alleged in the bill, but mere vague, indefinite, general, and uncertain averments are made. And no principle is more firmly settled or more familiar to the profession than that *fraud will not be inferred or presumed, and cannot be charged in general terms, but that the specific and positive facts which constitute it must be distinctly and definitely averred, and it must be shown that defendants participated therein.*" (emphasis added)

▇▇ Applying the above principles to the case at bar, it is clear that appellant can not allege that the facts in this suit were concealed from appellant by appellee or his privies, because of the fact that the quitclaim deed was duly recorded in the public records of Hinds County at all times since October 11, 1944, some eighteen years prior to filing of the bill of complaint.

▇▇ The fact that the deed was duly of record prevents the rule of concealed fraud applying, for this court has said in the case of Adams v. Belt, 136 Miss. 511, 100 So. 191, at p. 194, that the rule of concealed fraud can not apply to those things that are of public record. The court stated the principle as follows:

"Conceding for the sake of the argument that concealed fraud is here charged, the rule thereby sought to be invoked, that the limitation on the right to bring a suit to annul a decree commences only when the fraud on which the suit is predicated is or ought to have been discovered, cannot apply here, for defendants in the cause in which the orders and decrees here sought to be annulled were rendered were dead when the cause in which the decree here appealed from was rendered

was tried in the court below, and it does not appear from the evidence that they did not know of the matters on which the charge of fraud is predicated. *Moreover the rule of concealed fraud cannot apply to those things that were here openly done or which appear of record.* Thornton v. City of Natchez, 88 Miss. 1, 41 So. 498; Norris v. Haggin, 136 U. S. 386, 10 S. Ct. 942, 34 L. Ed. 424.'' (Emphasis added)

A more recent case in this line of decisions is Ault-man v. Kelly, 236 Miss. 1, 109 So. 2d 344 (1959), wherein suit was filed to set aside a mineral conveyance of an ancestor in which suit the complainant alleged that the ancestor was incompetent at the time of the conveyance. The facts show that the ancestor died shortly after executing the conveyance and that more than ten years had elapsed from the time of his death until the time suit was filed. Defendants filed a plea in bar based on Code sections 709 and 710 and the lower court overruled the plea after which an appeal was taken to the Supreme Court. On appeal the Supreme Court ruled that, since the deed was filed of record immediately after delivery, constructive notice of the making of the deed began the moment it was lodged with the proper officer for record; and the Court stated the principle as follows:

''When the cause of action arose, the heirs, whether they had any actual knowledge of the deed or not, had constructive knowledge thereof, because it had been recorded. 'Constructive notice of the making of a deed begins the moment it is lodged with the proper officer for record.' Sowell v. Rankin, 120 Miss. 458, 82 So. 317; Bank of Lexington v. Cooper, 115 Miss. 782, 76 So. 659; Mangold v. Barlow, 61 Miss. 593, 48 Am. Rep. 84. *Besides, where the alleged fraudulent conveyance is recorded, the circumstances are public and the means of finding out the character of the transaction are available. Consequently, the running of the statute of limi-*

*tation is not prevented. Fleming v. Grafton, 54 Miss. 79.''* (Emphasis added)

The long delay in complaining of the alleged fraud, of which appellant had constructive notice, is the basis for holding that appellant has acquiesced in the effect of the quitclaim deed and is deemed to have affirmed the deed and waived her right to rescind. See 9 Am. Jur. 389, Cancellation of Instruments, § 46.

Before a party can claim the benefit of fraud, the party must clearly allege the facts and circumstances which constitute the fraud and prove, by clear and convincing evidence, that the alleged facts and events did occur and that thereby the victimized party was defrauded. To establish fraud, there must be a representation of the falsity thereof, the materiality of the false representations, the speaker's intent that it be acted on by the other in the anticipated manner, the hearer's ignorance of its falsity, his reliance on its truth, his right to rely thereon, and his consequent and proximate injury. See 37 C.J.S., Fraud, § 2c(2).

It appears that had there been any fraud, it conceivably would have occurred on October 10, 1944, at a time when appellant was present, willing and able to act for her own said interest, and if there had been any fraud, not only was it not concealed fraud, but it was known to the appellant by her actual knowledge of the facts. Concealed fraud can not apply to those things which appear of record, therefore nothing contained in the quitclaim deed of October 10, 1944 can be regarded as concealed fraud.

In the case of Cunningham v. Lockett, 216 Miss. 879, 63 So. 2d 401 (1953), this Court held that blood alone is not sufficient to furnish the basis for a confidential relationship, but the material inquiry is whether at the very time the incident occurred the party claiming the confidential relationship possessed the mental capacity to understand and appreciate the nature and effect of

the act being done. In the Cunningham case the Court refused to hold that such a relationship existed on the basis of the fact that, significantly, the appellant therein continued to execute Deeds of Trust without complaint and to take other actions as to her land in due course. Similarly, appellant in the case at bar executed deeds as late as 1958 and 1959, and no complaint had been raised as to them.

There is no doubt that one cotenant may purchase from another cotenant; in the case of Conner v. Conner, 238 Miss. 471, 508, 119 So. 2d 240 (1960), we find this statement:

"But the appellants' attorneys say that Governor Conner's possession and control of the property was that of managing cotenant holding for and on behalf of all of the cotenants, and that there is no testimony in the record to show that there was any change of possession after the execution of the deed by Jack to Governor Conner on January 3, 1930. That fact, however, is in our opinion not a controlling circumstance in this case. This is not a case where a managing cotenant, without the consent of the others has bought in an outstanding adversary title and asserted it for his exclusive benefit. *It is well settled that one tenant can purchase the share of another just as he would buy property from a stranger.* 14 Am. Jur. 130, Cotenancy, par. 62. A sale of an undivided interest by a tenant in common severs the relationship between himself and his cotenant, 86 C.J.S. Tenancy in Common, § 14, p. 375. After the execution of the deed by Jack to Governor Conner on January 3, 1930, Governor Conner was presumed to be in possession of the undivided 1/4 interest which he had purchased from Jack by virtue of the warranty deed which Jack had executed."

From the evidence adduced in the record, the court was eminently correct in its findings, and we are unable to say in any respect that the Chancellor was mani-

festly wrong in the decree or order entered in this case. The case is therefore affirmed.

Affirmed.

*McGehee, C. J., and Rodgers, Jones and Brady, JJ.,* concur.