COLEMAN, JUSTICE, DISSENTING:
 

 ¶ 66. The majority affirms the trial court's award and finding of fraud that is based on a fraudulent statement neither proven nor alleged but, rather, crafted for the first time by the trial court in its dispositive opinion. Moreover, the trial judge acknowledged in the opinion that, in order to impose liability against Watson, he disregarded the law applicable to fraud and rested his verdict on equitable considerations. The chancellor erred in doing so; equity must follow the law. The chancellor applied the wrong legal standard to the State's claims made pursuant to the Consumer Protection Act. Accordingly and with respect, I dissent.
 

 I. The State's common-law fraud claim failed as a matter of law.
 

 ¶ 67. The State's common-law fraud claim failed as a matter of law pursuant to the trial judge's own findings. The statement alleged and proved by the State to be false was known by the State to be false. Only by engineering a new, allegedly false statement and predicating the finding of liability upon it was the trial court able to find Watson liable, but the State neither alleged nor proved that Watson ever actually made the new, allegedly false statement.
 

 A. The State bore the burden of proving all nine elements of common-law fraud by clear and convincing evidence.
 

 ¶ 68. In order to succeed on a claim of fraud, a party must prove by clear and convincing evidence each of the following nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person in a manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.
 
 Trim v. Trim
 
 ,
 
 33 So.3d 471
 
 , 478 (Miss. 2010).
 

 B. The representation alleged and proven by the State to satisfy the first element of its fraud claim was the Average Wholesale Price of Watson's drugs.
 

 ¶ 69. The State recorded the final iteration of its claims against Watson in its
 Second Amended Complaint (as to Watson Pharmaceuticals ...). There, the State alleged that Watson had misrepresented the average wholesale price of its drugs. The State alleged that Watson misled "the State of Mississippi about the Average Wholesale Prices of [its] drugs...," and that the Average Wholesale Price was not the "actual prices at which [Watson's] drugs were generally and currently available in the pharmaceutical marketplace...." The State alleged that Watson engaged in "the typical generic drug industry practice of setting or publishing AWP with or without reference to the anticipated wholesale price of the product and then simply failing or declining to correct that price as the market drops." Under the section of the Second Amended Complaint detailing the fraud allegations, the State alleged, "Watson and its related entities knew that the [Average Wholesale Price] information provided and caused to be reported was false."
 

 ¶ 70. Claims sounding in fraud must be pleaded with particularity. Miss. R. Civ. P. 9(b).
 

 "[T]he circumstances constituting the fraud shall be stated with particularity. Fraud will not be inferred or presumed and may not be charged in general terms. The circumstances of the alleged fraud such as the time, place
 
 and contents of any false representations
 
 or conduct must be stated."
 
 Brabham v. Brabham
 
 ,
 
 483 So.2d 341
 
 , 342 (Miss.1986) (citing Miss. R. Civ. P. 9(b) ;
 
 McMahon v. McMahon
 
 ,
 
 247 Miss. 822
 
 ,
 
 157 So.2d 494
 
 , 495 (1963) ; V. Griffith, Mississippi Chancery Practice § 589 (2d ed. 1950)).
 

 Allen v. Mac Tools, Inc.
 
 ,
 
 671 So.2d 636
 
 , 642 (Miss. 1996) (emphasis added). A plaintiff alleging fraud must include the allegedly false statement in the complaint. In the case
 
 sub judice
 
 , the statements alleged by the State to be false were the average wholesale prices of the various generic drugs it offered. Pursuant to the language of the complaint, discussed above, Watson told the State, through the reporting intermediary, that the average wholesale price of Drug A was $X. The statement was repeated and made over and over again as to each drug and each instance of reporting, and it was the statement alleged and proved by the State at trial in satisfaction of the first element of fraud.
 

 ¶ 71. After the trial, the chancellor wrote, "The State introduced substantial evidence in support of its position that [the Department of Medicaid] understood that the term [Average Wholesale Price] means just what it says: the
 
 Average Wholesale Prices
 
 paid to Watson by retailers for the drugs at issue." The chancellor listed the proof which included,
 
 inter alia
 
 , the plain meaning of Average Wholesale Price and various publications that define Average Wholesale Price as an average of wholesale prices paid by retailers.
 

 C. he evidence showed, and the trial judge found, that the plaintiff State of Mississippi knew that the statement at issue was false, at which point the State's common-law fraud claim failed as a matter of law.
 

 ¶ 72. On appeal, Watson makes arguments as to why the proof at trial failed to establish several of the elements of the State's claim for common-law fraud. However, the most compelling argument centers around the sixth element, the hearer's ignorance of the false nature of the statement.
 

 ¶ 73. In his final opinion, the chancellor who presided over the trial and heard the evidence wrote,
 

 After carefully reviewing all of the evidence submitted by the parties on the issue of the meaning of [Average Wholesale Price] and more importantly, Watson's
 and [the Department of Medicaid's] understanding of the meaning of [Average Wholesale Price], the evidence establishes that both Watson and [the Department] understood that Watson's [Average Wholesale Prices] ... that were relied upon by [the Department] in determining its estimated acquisition cost reimbursement for Watson's drugs were not true average of wholesale prices charged by Watson to retailers for its particular drug products.
 

 The above-quoted finding by the chancellor ended the State's fraud claim-full stop. After identifying the State's alleged representation and discussing the proof that led him to find that the representation was false, the trial judge unequivocally found that the Department of Medicaid knew it was false. As a matter of law, the finding should have been the end of the State's fraud claim, and a verdict in favor of Watson should have been entered because the State wholly failed to prove the sixth element.
 

 D. The trial judge erred when he invoked the equitable power of the court to reformulate the representation alleged by the State to satisfy the first element of its fraud claim.
 

 ¶ 74. After acknowledging that the State knew full well that the Average Wholesale Prices supplied by Watson were not actually representative of the average prices paid by pharmacies for the drugs produced by Watson, the chancellor nevertheless embarked upon a exploration of the plain meaning of the words Average Wholesale Price and concluded that the State was entitled to believe they meant, well, average wholesale price. However, the chancellor's exploration of the meaning contradicts the conclusion he reached earlier when, in the above-quoted and clear language, he found that the State already knew Average Wholesale Price did not mean average wholesale price.
 

 ¶ 75. The chancellor went on to provide the following explanation:
 

 Finally, Chancery Courts are Courts of Equity. The "Chancellor[']s remedial powers are marked by plasticity. Equity jurisdiction permits innovation that justice may be done."
 
 Hall v. Wood
 
 ,
 
 443 So.2d 834
 
 , 842 (Miss. 1983). In the opinion of the Court, adopting the meaning of the Average Wholesale Price that Watson proposes would be inequitable, and the Court declines to do so.
 

 In other words, after making factual findings fatal to the State's claim of fraud, which is a clearly defined legal claim with known elements, the chancellor untethered his ultimate finding of liability from the controlling law by claiming the authority in equity to disassociate his determination from the common-law elements of fraud. When the chancellor took the above-described step, he erred and wrongly based a multimillion-dollar damages award against the defendant on a claim never made and not cognizable in our law.
 

 ¶ 76. Equity follows the law; equity
 
 must
 
 follow the law.
 
 Joel v. Joel
 
 ,
 
 43 So.3d 424
 
 , 430 (¶ 20) (Miss. 2010). Courts of equity cannot ignore or change unambiguous legal principles to provide relief where the law forbids it.
 
 In re Estate of Miller
 
 ,
 
 840 So.2d 703
 
 , 708 (Miss. 2003). I find persuasive the reasoning of the unanimous Mississippi Court of Appeals in
 
 Mosley v. Triangle Townhouses, LLC
 
 ,
 
 170 So.3d 1251
 
 (Miss. Ct. App. 2015). There, the plaintiff sued for specific performance and asked the chancery court to order the defendant to pay him "a fair and equitable finder's fee if he found a buyer" for the defendant's apartment complex.
 
 Mosley
 
 ,
 
 170 So.3d at 1252
 
 (¶ 3). However, the plaintiff had no real estate broker's license and Mississippi's statutory law forbade him
 from recovering such a fee.
 

 Id.
 

 at 1252
 
 (¶ 5). The plaintiff argued, "[E]quity follows the law as far as the law goes in securing the rights of the parties and no further. When the law stops short of securing this object, equity continues the remedy until complete justice is done." In other words, the plaintiff argued that, despite the bar to recovery presented by the statute, the court should be able to utilize its equitable powers to provide him with a remedy.
 

 ¶ 77. The Court of Appeals flatly rejected his argument, writing, "This is not a case where the law simply fails to go as far as justice requires. Instead, this is an area where the law actually places a roadblock preventing equity from going any further."
 

 Id.
 

 at 1254
 
 (¶ 17). In the case
 
 sub judice
 
 , as in
 
 Mosley
 
 , the law on fraud provides a roadblock, because the State cannot and did not prove every element of its claim.
 
 See
 

 Magniac v. Thomson
 
 ,
 
 56 U.S. 15
 
 How. 281, 299,
 
 14 L.Ed. 696
 
 (1853) ("That wherever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim
 
 equitas sequiter legem
 
 is strictly applicable."). The chancellor erred when he cited equity to reach a result the law forbids.
 

 E. No evidence supports an award against Watson for common-law fraud based on the chancellor's reformulation of the alleged representation.
 

 ¶ 78. Even if equitable considerations allowed the chancellor to fashion relief denied by the failure of the State to prove the elements of common-law fraud, no evidence exists in the record to support an award of fraud under the chancellor's revised version of the allegedly false representation. The representation upon which the chancellor based his liability determination was that the Average Wholesale Price was "predictably related" to average market prices, as he put it in the section of his opinion discussing the Consumer Protection Act. On appeal, Watson contends that the State never provided any evidence that it had made any such statement. In its responsive brief, the State does not identify any testimony or other evidence otherwise. The very first element of a fraud claim is that a representation be made, and the claim must fail at the outset absent evidence of a representation.
 

 II. The chancellor erred by utilizing an outdated standard for finding Watson liable pursuant to the Mississippi Consumer Protection Act.
 

 ¶ 79. The chancery court determined that Watson had violated the Mississippi Consumer Protection Act. At issue is Mississippi Code Section 75-24-5(1), which prohibits "unfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce." Section 75-24-5(2) provides that the following are "unfair methods of competition and unfair or deceptive trade practices or acts" and are prohibited: "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" and "Misrepresentations of fact concerning the reasons for, existence of, or amount of price reductions."
 
 Miss. Code Ann. §§ 75-24-5
 
 (2)(e),(k) (Rev. 2016). The chancery court provided six cases from other jurisdictions in which other courts "have determined that reporting inflated [average wholesale prices] in the manner Watson admittedly did in this case, constitutes a deceptive and unfair trade practice in violation of consumer protection laws substantial[ly
 ] identical to Mississippi's [Consumer Protection Act].
 

 ¶ 80. The chancery court explained that Mississippi's Consumer Protection Act does not provide a definition of "unfair or deceptive trade practice[;]" therefore, it utilized guidance from the Federal Trade Commission and federal court precedent of analogous federal statutes. The chancery court's opinion relies on
 
 FTC v. Raladam Co.
 
 ,
 
 316 U.S. 149
 
 , 152,
 
 62 S.Ct. 966
 
 ,
 
 86 L.Ed. 1336
 
 (1942), in which the United States Supreme Court determined that a particular act or practice is deceptive or unfair if it has the capacity or tendency to deceive. Rejecting Watson's argument that the case addressed regulations regarding advertisements of reductions off list prices and was inapplicable, the chancery court cited
 
 In Re: Giant Food, Inc.
 
 ,
 
 61 F.T.C. 326
 
 (1962), to explain that "FTC regulations regarding advertisements for reductions off list prices maintain that a particular list price 'will not be deemed fictitious if it is the price at which substantial (that is not isolated or insignificant) sales are made' but that one 'significantly in excess of the highest price at which substantial sales in the trade area are made' is misleading." Finally, the chancery court cited a Massachusetts district court case wherein a similar argument to Watson's sticker or list price argument was made. In
 
 In Re: Lupron
 
 ,
 
 295 F.Supp.2d 148
 
 , 168 (n.19) (D. Mass. 2003), the district court stated: "There is a difference between a sticker price and a sucker price. If one were confronting a modest mark up of the actual [average wholesale price] ... intended to make sales of the drug for the treatment of Medicare patients commercially viable ..., it is unlikely that there would have been a government investigation of Defendants' marketing practices." Based on the above cases, the chancery court concluded that "Watson's conduct in causing to be published [average wholesale prices] that have no predictable relationship to what customers pay for its drugs while knowing Mississippi relied on this information in determining [estimated acquisition cost] is an unfair and deceptive trade or practice within the meaning of Mississippi's Consumer Protection Act."
 

 ¶ 81. Watson argues that the chancery court erred in applying the "capacity or tendency to deceive" test, as it is outdated and has been replaced by the target audience test adopted by the Federal Trade Commission. According to the Federal Trade Commission's Policy Statement on Deception,
 
 103 F.T.C. 110
 
 (1983), a court first must determine whether there has been a representation, omission, or practice likely to mislead. Then, the practice must be examined from the perspective of a consumer acting reasonably in the circumstances. Finally, the representation, omission, or practice must be material. Watson further explains that courts have rejected unreasonable interpretations by members of a target audience.
 

 ¶ 82. According to Watson, "Mississippi Medicaid utilized published '[average wholesale prices]' with complete understanding of its industry-wide meaning, again as evidenced by its own definition and its consistent practice of discounting off published [average wholesale prices]." Watson argues that its conduct was not material because no evidence was presented that Medicaid would have acted differently had it been aware of a falsity, a premise which is supported by the fact that Watson had not changed its methodology even after filing suit or appearing for oral arguments held in the course of the instant appeal.
 

 ¶ 83. Watson's conduct was not a violation of Mississippi's Consumer Protection Act. Mississippi Code Section 75-24-3(c) provides, "It is the intent of the Legislature
 that in construing what constitutes unfair or deceptive trade practices that the courts will be guided by the interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act ( 15 U.S.C.S. 45(a)(1) ) as from time to time amended." Therefore, the above, newer Federal Trade Commission test is required and not the test relied upon by the chancery court. Courts have no discretion, but must follow constitutional statutory directives.
 
 Stockstill v. State
 
 ,
 
 854 So.2d 1017
 
 , 1023 (¶ 13) (Miss. 2003) (citing
 
 Anderson v. Lambert
 
 ,
 
 494 So.2d 370
 
 , 372 (Miss. 1986) (citing
 
 Baker v. State
 
 ,
 
 327 So.2d 288
 
 (Miss. 1976) ;
 
 Carter v. Harrison Cty. Election Comm'n
 
 ,
 
 183 So.2d 630
 
 (Miss. 1966) ;
 
 Beard v. Stanley
 
 ,
 
 205 Miss. 723
 
 ,
 
 39 So.2d 317
 
 (1949) )). As the
 
 Stockstill
 
 Court wrote, "Our primary objective when construing statutes is to adopt that interpretation which will meet the true meaning of the Legislature."
 
 Stockstill
 
 ,
 
 854 So.2d at 1023
 
 (¶ 13) (citations omitted). When it comes to the question of how courts should define unfair trade practices, the Legislature has made its intent crystal clear in Section 75-24-3 ; Courts must use the Federal Trade Commission interpretations.
 

 ¶ 84. In
 
 In re Cliffdale
 
 ,
 
 103 F.T.C. 110
 
 (1984), the Trade Commission explained:
 

 Consistent with its Policy Statement on Deception, issued on October 14, 1983, the Commission will find an act or practice deceptive if, first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material.
 
 These elements articulate the factors actually used in most ea[r]lier Commission cases identifying whether or not an act or practice was deceptive, even though the language used in those cases was often couched in such terms as "a tendency and capacity to deceive.
 
 "
 

 (Emphasis added.) Thus, the chancellor applied an inappropriate legal standard, as the above test clearly is the preferred test and is in line with the statutory directive. Because the chancellor applied the wrong legal standard, I would reverse and remand for the application of the correct one.
 

 III. Conclusion
 

 ¶ 85. The trial court's finding acknowledging that the State knew of the falsity of the allegedly fraudulent statements defeats the State's common-law fraud claim as a matter of law. Both the compensatory and punitive damages awarded to the State based on the common-law fraud claim should be reversed. In contravention of the applicable statute, the trial court employed the wrong legal standard to the State's claim that Watson violated the Mississippi Consumer Protection Act. I would reverse and render judgment in favor of Watson as to the State's common-law fraud claim and reverse and remand the Consumer Protection Act claim for the trial court to apply the correct legal standard.
 

 ISHEE, J., JOINS THIS OPINION.